[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 477.]

AMOCO OIL COMPANY, APPELLEE, *v*. PETROLEUM UNDERGROUND STORAGE

TANK RELEASE COMPENSATION BOARD, APPELLANT.

R&R SERVICE, APPELLANT, *v*. PETROLEUM UNDERGROUND STORAGE TANK

RELEASE COMPENSATION BOARD, APPELLEE.

[Cite as *Amoco Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.*, 2000-Ohio-224.]

*Petroleum underground storage tanks—Petroleum Underground Storage Tank Financial Assurance Fund—Ohio Adm.Code 3737-1-07(A)(1) is a necessary and appropriate rule for the administration of the Fund.*

(Nos. 99-1481 and 99-1780—Submitted April 11, 2000—Decided August 30, 2000.)

APPEAL from the Court of Appeals for Montgomery County, No. 17672.

CERTIFIED by the Court of Appeals for Sandusky County, No. S-99-003.

————————————

{¶ 1} Accidental releases (leakage) of hazardous products from underground storage tanks ("USTs") have created environmental concerns. See R.C. 3737.94. In 1986, the General Assembly amended R.C. 3737.87 (now R.C. 3737.88[1]) to charge the State Fire Marshal ("Fire Marshal") with the responsibility of implementing an underground storage tank program.[2] Am.Sub.H.B. No. 552, 141 Ohio Laws, Part III, 4905. Effective July 1, 1987, the Fire Marshal was also

———

1. Effective July 11, 1989, R.C. 3737.87 was renumbered R.C. 3737.88. Am.Sub.H.B. No. 421, 143 Ohio Laws, Part III, 5055.

2. By 1990, the Fire Marshal adopted rules addressing, *inter alia,* applicability, definitions, reporting requirements, registration, financial responsibility, design specifications and operating requirements.

charged with the responsibility of implementing corrective action[3] programs, which obligate owners or operators[4] of USTs to clean up any releases. Am.Sub.H.B. No. 171, 142 Ohio Laws, Part II, 2270-2271. In 1992, the Fire Marshal adopted rules that addressed corrective actions. See Ohio Adm.Code Chapter 1301:7-9.

{¶ 2} Subject to limited exceptions, the owner or operator of a UST is strictly liable for the cost of any corrective action ordered by the Fire Marshal. R.C. 3737.89. In order to assist owners or operators of USTs to defray the cleanup costs and damages caused by releases, effective July 11, 1989, the General Assembly enacted R.C. 3737.91, which created the Petroleum Underground Storage Tank Financial Assurance Fund ("Fund"). Sub.H.B. No. 421, 143 Ohio Laws, Part III, 5049, 5068. The Fund is administered by the Petroleum Underground Storage Tank Release Compensation Board ("Board"). R.C. 3737.90. The Board administers the Fund primarily for the purpose of reimbursing qualified UST owners or operators for the cost of corrective actions to clean up a release. R.C. 3737.92(A)(3). The Fund is analogous to an insurance policy; UST owners and operators pay an "assurance fee" to the Board in return for financial assistance in implementing a corrective action should a release occur. See *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 579 N.E.2d 705.

{¶ 3} This opinion addresses two individual cases—*R&R Service v. Ohio Petroleum Underground Storage Tank Release Comp. Bd.*, No. 99-1780, and *Amoco Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.*, No.

---

3. A " '[c]orrective action' means any action necessary to protect human health and the environment in the event of a release of petroleum into the environment" including "remedial action to clean up contaminated ground water, surface water, soils, and subsurface material and to address residual effects of a release after the initial corrective action is taken." R.C. 3737.87(B).

4. A person who is the owner or operator of a UST is also referred to as a "responsible person." R.C. 3737.87(N). Thus, it would appear that the terms are interchangeable. For purpose of simplicity we will use "owner" or "operator" in the remainder of the opinion.

99-1481. Both cases address the validity of Ohio Adm.Code 3737-1-07(A)(1), which requires owners and operators of USTs to submit an eligibility application to the Board for compensation from the Fund within one year of the date that an accidental release of petroleum was to be reported to the Fire Marshal.

*Amoco* Case, No. 99-1481

**{¶ 4}** On September 28, 1995, Amoco discovered a release from its UST located on Sunbury Road in Westerville, Ohio. On October 2, 1995, Amoco discovered a release from its UST located on Miamisburg-Centerville Road in Dayton, Ohio. Amoco submitted an eligibility application to the Board for the Dayton site on August 16, 1997 and for the Westerville site on August 18, 1997, both for the purpose of recovering clean up costs from the Fund for the releases from the USTs. The Executive Director ("Director") of the Board determined that neither of Amoco's eligibility applications was filed within one year of the date the release was required to be reported to the Fire Marshal pursuant to Ohio Adm.Code 3737-1-07(A)(1). Thus, the Director denied the eligibility applications.

**{¶ 5}** Amoco objected to the determination. A referee recommended that the Director's order denying eligibility be affirmed. The Board adopted the recommendation of the referee.

**{¶ 6}** Amoco appealed to the Court of Common Pleas of Montgomery County. The trial court affirmed the decision of the Board.

**{¶ 7}** Amoco appealed the decision to the Court of Appeals for Montgomery County. The appellate court reversed the trial court's decision and held that the Board went beyond its authority in adopting Ohio Adm.Code 3737-1-07. Specifically, the court found that the one-year limitation was not necessary or appropriate to maintain the Fund's financial integrity because the General Assembly had authorized the Board to makes rules establishing priorities for payment and allowing payment by installment. The appellate court also held that the one-year time limitation for filing an eligibility claim "as a prerequisite for

reimbursement of claims, unpermissibly [*sic*] adds to the legislative enactment which authorizes the Board to adopt, amend, and rescind such rules." Thus, the appellate court held that Ohio Adm.Code 3737-1-07 is void.

*R&R Service*, No. 99-1780

{¶ 8} On August 18, 1993, appellant, R&R Service, discovered a release from its UST located at East McPherson Street in Clyde, Ohio. R&R Service submitted an eligibility application to the Board for the site on December 15, 1997. The Director determined that R&R Service's eligibility application was not filed within one year of the date the release was required to be reported to the Fire Marshal pursuant to Ohio Adm.Code 3737-1-07(A)(1). Thus, the Director denied R&R Service's eligibility application.

{¶ 9} R&R Service objected to the determination. A referee recommended that the Director's decision be affirmed. The Board adopted the referee's recommendation.

{¶ 10} R&R Service appealed to the Court of Common Pleas of Sandusky County. The trial court reversed, finding that the Board exceeded its authority in adopting Ohio Adm.Code 3737-1-07(A)(1).

{¶ 11} The Board appealed to the Court of Appeals for Sandusky County. The appellate court reversed the trial court's decision and found that Ohio Adm.Code 3737-1-07(A)(1) was a valid rule. The appellate court also determined that its judgment was in conflict with the *Amoco* case and entered an order certifying a conflict.

{¶ 12} This cause is before this court upon our determination that a conflict exists between case No. 99-1481 (*Amoco*) and case No. 99-1780 (*R&R Service*) and upon the allowance of a discretionary appeal. We have consolidated these cases for purposes of this appeal.

_____

*McHanon, DeGulis, Hoffmann & Blumenthal, L.L.P.*, *David S. Hoffmann, Michael R. Blumenthal* and *Suzanne M. Fisher,* for the applicants.

*Betty D. Montgomery*, Attorney General, and *James Leo*, Assistant Attorney General, for the board.

*Pepple & Waggoner* and *Glenn D. Waggoner*, urging validity of the rule for *amicus curiae*, Ohio Petroleum Retailers and Repair Association.

————————————

**LUNDBERG STRATTON, J.**

**{¶ 13}** The Court of Appeals for Sandusky County journalized an entry in *R&R Service v. Petroleum Underground Storage Tank Release Comp. Bd*. that certified: "[T]his court finds that our judgment in the instant appeal [which upheld the validity of Ohio Adm.Code 3737-1-07(A)(1)] is in conflict with *Amoco Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.* (June 30, 1999), Montgomery App. No. 17672, unreported [1999 WL 961243], on the issue of whether Ohio Adm.Code 3737-1-07(A)(1) is an invalid rule." For the following reasons, we find that Ohio Adm.Code 3737-1-07(A)(1) is a valid rule and affirm the judgment of the Sandusky County Court of Appeals.

**{¶ 14}** Appellee Amoco makes three arguments as to why Ohio Adm.Code 3737-1-07(A)(1) is invalid.[5] First, Amoco argues that the one-year time limit is not necessary or appropriate for the administration of the Fund. Second, Amoco argues that the time limitation conflicts with the criteria for the UST fund eligibility set out in the Revised Code. Third, Amoco argues that the one-year deadline for filing an eligibility application violates public policy because it denies eligibility to persons who otherwise meet the statutory criteria for eligibility. We will address each of these arguments in order.

*Ohio Adm.Code 3737-1-07(A)(1) Is Necessary and Appropriate*

---

5. Amoco and R&R Service submitted a joint brief asserting that Ohio Adm.Code 3737-1-07 is invalid. For purposes of simplicity, we will refer to these joint arguments as being made by Amoco.

**{¶ 15}** It is well settled that the General Assembly cannot delegate legislative authority, but it can delegate rule-making authority to agencies. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 342, 28 O.O. 295, 300-301, 55 N.E.2d 629, 635. In delegating this authority, ordinarily the General Assembly must provide standards to guide the agency in its rulemaking. *Id*. at paragraph three of the syllabus. The administrative agency must adopt rules within the standards provided by the General Assembly in order for the rules to be valid. *Burger Brewing Co. v. Thomas* (1975), 42 Ohio St.2d 377, 379, 71 O.O.2d 366, 367, 329 N.E.2d 693, 695.

**{¶ 16}** The General Assembly's grant of authority to the Board to adopt rules to administer the Fund is found in R.C. 3737.90(B). It states:

"The board may:

" * * *

"(2) In accordance with Chapter 119. of the Revised Code, adopt, amend, and rescind such other rules as are *necessary* or *appropriate* to implement and administer sections 3737.90 to 3737.98 of the Revised Code, *including, without limitation*, rules for the administration of the petroleum underground storage tank linked deposit program established under sections 3737.95 to 3737.98 of the Revised Code; *rules establishing priorities for the payment of claims* under section 3737.92 of the Revised Code * * *." (Emphasis added.)

**{¶ 17}** Pursuant to this broad grant of authority, the Board adopted Ohio Adm.Code 3737-1-07, which states:

"(A) As a prerequisite to determining fund payment of or reimbursement for corrective action costs for an accidental release of petroleum, the director * * * shall issue a determination of eligibility for payment * * * where all of the following conditions are established:

"(1) * * * for releases which are or were reported to the fire marshal * * * on or after January 1, 1996, receipt [of a completed eligibility application] within

one year from the date the release is or was required to be reported to the fire marshal * * * which has been made by a responsible person."

{¶ 18} Ohio Adm.Code 1301:7-9-13(C) requires "[o]wners and operators [of USTs] [to] report a release or suspected release to the fire marshal * * * within twenty-four hours of discovery by the owner or operator." Thus, Ohio Adm.Code 3737-1-07 requires the owner or operator of a UST to file an eligibility application within one year and one day of the date of the discovery of a release.

{¶ 19} Amoco argues that the one-year time limit for submitting an eligibility application is neither necessary nor appropriate because the eligibility criteria set out in R.C. 3737.92(D) and Ohio Adm.Code 3737-1-07 are not time sensitive. Amoco is incorrect.

{¶ 20} It is the Director who determines whether a UST owner is eligible. See R.C. 3737.92(B)(1), incorporating R.C. 3737.92(D) by reference. One of the criteria required under the eligibility claim is that "[a]t the time that the release was first suspected or confirmed, a responsible person possessed a valid certificate of coverage * * * for the petroleum underground storage tank system from which the release occurred." This language "for the petroleum underground storage system tank from which the release occurred" unambiguously places an obligation on the Director to determine the origin of the release. Thus, the Director is responsible for tracing a release to the leaking tank in order to make sure the release occurred from a tank with a valid certificate of coverage. R.C. 3737.92(D)(1). Tracing petroleum is a time-sensitive task that becomes more difficult with the passage of time because the petroleum diffuses, making it more difficult to trace.

{¶ 21} Amoco argues that tracing the release to the UST is the Fire Marshal's obligation, and therefore requiring the one-year deadline in Ohio Adm.Code 3737-1-07 to allow the Director to trace a release is unnecessary. However, an examination of the Fire Marshal's rule governing USTs fails to reveal that the Fire Marshal has the explicit duty of actually tracing a release to the leaking

tank. A UST site is defined as "the parcel of property where an UST system is or had been located." Ohio Adm.Code 1301:7-9-03(B)(3). Ohio Adm.Code 1301:7-9-13(B)(2)(c) defines a "release," *inter alia*, as a contamination of subsurface soil or ground water on a *UST site*. If contamination of a *UST site* reaches a threshold level, then a site assessment must be undertaken by the owner/operator of the UST. Ohio Adm.Code 1301:7-9-13(E)(1). In doing a site assessment, a UST owner must determine the "full extent" of the release, as well as the "vertical and horizontal extent of the release." Ohio Adm.Code 1301:7-9-13(I)(1) and (3)(e). This language requires an assessment of how far the released petroleum has spread in the soil or ground water; however, it does not explicitly require anyone to *trace* the release to the leaking UST. The rules consistently refer to a "UST site." There is nothing in the rules adopted by the Fire Marshal that indicates responsibility for a cleanup will be allocated beyond the owner of the UST site. Thus, it would appear that neither the Revised Code nor the rules adopted by the Fire Marshal explicitly require the Fire Marshal or the UST owner to trace a release to a specific leaking tank.

{¶ 22} Further, the Fire Marshal has no obligation to determine if a UST owner has a valid certificate of coverage from the Fund and may not obtain all the information the Director requires to determine eligibility.

{¶ 23} Finally, even if the Fire Marshal has traced the release to the leaking tank, it does not absolve the Director of his independent responsibility to trace the release. The Director of the Board has an independent duty to trace the release to the tank from which it emanated pursuant to R.C. 3737.92(D)(1) for the purpose of determining whether the release emanated from a tank with a valid certificate of coverage. Therefore, regardless of the Fire Marshal's responsibilities, tracing a release to the leaking tank is a responsibility to be determined by the Director of the Board. Thus, the one-year time limit for submitting an eligibility application

set out in Ohio Adm.Code 3737-1-07 has a temporal connection to the Director's obligation to trace the release.

{¶ 24} The one-year time limit for submitting an eligibility application also assists the Board in budgeting for the Fund. The rule addressing eligibility applications requires that owners or operators of USTs submit cost estimates of the required corrective actions. Ohio Adm.Code 3737-1-07(A)(4). Absent this one-year time limit on submission of interim cost estimates, the Board would not become aware of a UST owner's or operator's costs for corrective actions until submission of a cost claim by the UST owner or operator. See R.C. 3737.92(B); Ohio Adm.Code 3737-1-12. A cost claim is not required to be submitted until one year after the completion of all the corrective actions. Ohio Adm.Code 3737-1-12. Thus, without the one-year limitation on submission of these interim cost estimates, the Board would potentially not be aware of the costs of cleaning up a release until years after it occurred. The one-year time limit on submission of cost estimates allows the Board to better budget for the Fund and plan future tank assessments. For example, if the Board knows early on that claims will be increasing within the next year, it can distribute the increase more gradually to lessen the impact of increased fees on all UST owners and operators. Thus, the one-year time limit for submitting an eligibility application set out in Ohio Adm.Code 3737-1-07 has a temporal connection to budgeting for the Fund.

{¶ 25} The Court of Appeals for Montgomery County in the *Amoco* case held, and Amoco argues, that because the General Assembly has provided the Board authority to raise the fee assessment to tank owners and to pay claims in installments, the one-year time limit in Ohio Adm.Code 3737-1-07 is not necessary or appropriate because the Board can address any shortfalls in the Fund by using these tools to raise revenue. While the Board does have these tools at its disposal, it does not alleviate the need for early submission of cost estimates to assist in forecasting the budget for the Fund.

**{¶ 26}** Similar to a substantial fee increase, the cost of financing a shortfall in the Fund by issuing a substantial amount of bonds in a short period could result in dramatically increased interest costs. This too could result in a steep increase in costs to the UST owners and operators because the Board can pass on interest costs to the UST owners/operators. The mere fact that the Board has the authority to issue bonds does not supplant the Board's obligation to manage the Fund in an optimum manner. Budgeting is one of the tools that facilitates proper management of the Fund.

**{¶ 27}** Finally, implementation of installment payments to reimburse costs for corrective action could be detrimental to the environment. Where UST owners are unable to afford to finance cleanup costs up front, they will be unable to pay cleanup contractors until they receive payments from the Fund. Where cleanup contractors require immediate payment for their services, cleanup will only occur as the money is dispensed over the installment period. Depending on the length of the cleanup, installment payments by the Board could cause cleanup to be stretched out over years. Delayed cleanup can only be detrimental to the environment.

**{¶ 28}** The purpose of administrative rulemaking is to facilitate an administrative agency's placing into effect the public policy embodied in legislation to be administered by the agency. *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 697 N.E.2d 198. "Appropriate" is defined as "specially suitable." Webster's Third New International Dictionary (1993) 106. "Necessary" is defined as "whatever is essential for some purpose." *Id*. at 1510. Among the purposes of R.C. Chapter 3737.90 *et seq*. are controlling pollution, protecting the public, and preserving the economic welfare of the people of the state. See R.C. 3737.94(A). Because the one-year time limit in Ohio Adm.Code 3737-1-07(A)(1) is especially suitable and essential for the Board to administer the Fund because it allows the Board to better forecast its budget and because information sought is

time sensitive, we find that the Ohio Adm.Code 3737-1-07 is necessary *and* appropriate.

*Ohio Adm.Code 3737-1-07 Does Not Conflict with the Revised Code*

**{¶ 29}** Rules adopted by administrative agencies are valid and enforceable unless unreasonable or in conflict with the statutory enactment covering the same subject matter. *State ex rel. DeBoe v. Indus. Comm.* (1954), 161 Ohio St. 67, 53 O.O. 5, 117 N.E.2d 925.

**{¶ 30}** Amoco argues that Ohio Adm.Code 3737-1-07(A)(1) impermissibly adds an unauthorized one-year time limitation to the statutory eligibility criteria. Amoco is correct that an administrative rule cannot add or subtract from the legislative enactment. See *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Ohio Bur. of Emp. Serv.* (1986), 21 Ohio St.3d 5, 10, 21 OBR 269, 273, 487 N.E.2d 288, 292. However, this court has distinguished between substantive and procedural rights. *Viers v. Dunlap* (1982), 1 Ohio St.3d 173, 175, 1 OBR 203, 205, 438 N.E.2d 881, 883, overruled on other grounds, *Wilfong v. Batdorf* (1983), 6 Ohio St.3d 100, 6 OBR 162, 451 N.E.2d 1185. In recognizing this distinction, this court has held that an administrative rule placing a time limit within which a party must act is procedural and within the agency's rule-making authority. See, generally, *State ex rel. Curry v. Indus. Comm.* (1979), 58 Ohio St.2d 268, 12 O.O.3d 271, 389 N.E.2d 1126; *Hartzell Propeller, Inc. v. Ohio Bur. of Emp. Serv.* (1989), 65 Ohio App.3d 575, 584 N.E.2d 1263; *Martin v. Franklin Cty. Sheriff's Dept.* (June 25, 1991), Franklin App. Nos. 90AP-1342 and 90AP-1343, unreported, 1991 WL 123981.

**{¶ 31}** Ohio Adm.Code 3737-1-07(A)(1) requires that eligibility applications be submitted within one year of the date on which a discovered release is to be reported to the Fire Marshal. There are no other statutorily set time limitations in R.C. Chapter 3737 that pertain to the eligibility application. Thus, Ohio Adm.Code 3737-1-07(A)(1) does not impermissibly add to, or conflict with,

the General Assembly's legislative enactment addressing USTs, it merely provides a time limitation that is within the Board's rule making authority. *DeBoe* and *Curry, supra*.

*Ohio Adm.Code 3737-1-07 Does Not Violate Public Policy*

**{¶ 32}** Amoco argues that the one-year limitation for submitting eligibility claims violates the Board's public policy mandate because it denies eligibility to owners or operators of USTs who otherwise meet the statutory criteria for eligibility.

**{¶ 33}** The public policy of the Board is "to contribute toward one or more of the following: to preserve and protect the water resources of the state and to prevent, abate, or control the pollution of water resources, particularly ground water, for the protection and preservation of the public health, safety, convenience, and welfare, to assist in the financing of repair and replacement of petroleum underground storage tanks and to improve property damaged by any petroleum releases from those tanks, and to preserve jobs and employment opportunities or improve the economic welfare of the people of the state." R.C. 3737.94(A).

**{¶ 34}** The Board administers the Fund primarily for the purpose of reimbursing qualified UST owners and operators for the cost of corrective actions. R.C. 3737.92(A)(3). While upholding the one-year limitation in Ohio Adm.Code 3737-1-07(A)(1) could preclude some otherwise qualified owners or operators of USTs from becoming eligible for compensation, we have determined in our discussion above that the deadline is necessary and appropriate for the Board to administer the Fund. For example, the one-year time limit assists the Board in budgeting for the Fund, and allows the Board to more gradually increases tank fees. This "improve[s] the economic welfare of the people of the state," one of the enumerated public policy goals of the Board, by easing the impact of tank fees on tank owners.

*The One-Year Time Limit in Ohio Adm.Code 3737-1-07 Is Reasonable*

12

**{¶ 35}** Ohio Adm.Code 3737-1-07 provides the responsible person one year to present the Board with the eligibility application from the time the release was required to be reported to the Fire Marshal. Amoco argues that the one-year time period is unreasonable. Amoco correctly states that a site assessment requires approval by the Fire Marshal. Amoco argues that because the Fire Marshal is not subject to any deadline for approving a site assessment, the time for filing the eligibility application may expire before the site assessment is approved. Implicit in Amoco's argument is that the information contained in the site assessment must be included in the eligibility application. There is nothing in the rules that indicates that all this information must be included in an eligibility application. The eligibility criteria only require that a UST owner or operator be in compliance with the Fire Marshal's orders at the time the eligibility application was filed. See R.C. 3737.92(D)(3); Ohio Adm.Code 3737-1-07(A)(6).

**{¶ 36}** Further, it appears that the eligibility application consists of only two pages and asks for easily accessible information such as the owner's or operator's address and phone number, dates of release, reporting of release, projected costs and other similar information. The Board claims that there is no cost to file the application, an assertion that Amoco never refuted. We find that these circumstances do not present an unreasonable time limitation.

**{¶ 37}** Thus, we hold that Ohio Adm.Code 3737-1-07 is a necessary and appropriate rule for the administration of the Fund. It does not conflict with or add to other provisions of the legislative enactment pertaining to regulation of USTs, and the time limit is not unreasonable. Accordingly, we affirm the judgment of the Court of Appeals for Sandusky County in the *R&R Service* case, but reverse the judgment of the Court of Appeals for Montgomery County in the *Amoco* case.

*Judgment affirmed in case No. 99-1780.*

*Judgment reversed in case No. 99-1481.*

MOYER, C.J., AND F.E. Sweeney, J., concur.

PATTON and COOK, JJ., concur in judgment only.

DOUGLAS and PFEIFER, JJ., dissent.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for RESNICK, J.

_____

**COOK, J., concurring in judgment only.**

{¶ 38} I agree with the majority that Ohio Adm.Code 3737-1-07(A)(1) is valid, that the judgment of the court of appeals in *Amoco* should be reversed, and that the judgment of the court of appeals in *R&R* should be affirmed. My reasons for concurring, however, revolve around the following points, emphasized by the court of appeals in *R&R* to illustrate why the rule is a permissible exercise of the Board's authority to adopt rules that are "necessary and appropriate" for the administration of the Fund.

{¶ 39} First, R.C. 3737.92 places procedural conditions on a responsible person's eligibility for payment from the Fund. Eligibility and entitlement to payment, therefore, are not synonymous under the statute. Furthermore, R.C. 3737.90(B) expressly authorizes the Board to adopt rules that are necessary and appropriate for the administration of the Fund, and sets out a *nonexhaustive* list of ways it might do that. Procedural rules adopted by the Board, then, are not rendered invalid merely because they impose conditions on entitlement to payment that are not found in the statute.

{¶ 40} Second, the one-year limitation aids the Board in preventing the submission of stale and fraudulent claims and ensuring fiscally sound management of the Fund.

{¶ 41} Finally, the fact that the deadline may preclude some otherwise eligible persons from obtaining payment from the Fund does not render it violative of public policy, as "the [Fund's] goal of financial responsibility for corrective action necessitated by a petroleum leak is [as] important" as the "overall purpose

of * * * promot[ing] environmental health and safety by encouraging owners and operators to comply with environmental standards." *R&R* appellate opinion.

{¶ 42} PATTON, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 43} The one-year limitations period at issue in this case, Ohio Adm.Code 3737-1-07(A)(1), exceeds the Board's rule-making authority because it is neither necessary nor appropriate. R.C. 3737.90(B). It is not necessary because there are many lesser sanctions that would serve a similar purpose; it is not appropriate because it is as likely to thwart the purposes of the Board as to advance them. See R.C. 3737.94(A) (charging the Board "to preserve and protect the water resources of the state and to prevent, abate, or control the pollution of water resources, * * * to assist in the financing of repair and replacement of petroleum underground storage tanks and to improve property damaged by any petroleum releases from those tanks").

{¶ 44} Preventing stale claims and ensuring fiscally sound management are solid goals. They can be readily accomplished through lesser sanctions, such as providing a lesser percentage of total cost or placing stale claims at the end of the payment line. The total cutoff for eligibility claims effected by the one-year limitations period is the province of the General Assembly. Accordingly, I would affirm the judgment in the *Amoco* case and reverse it in the *R&R Service* case, and hold that the one-year limitations period exceeds the Board's rule-making authority. I dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

_____