OPINION
{¶ 1} This is an appeal by defendants-appellants, Ohio Department of Health ("ODH"), and the director of ODH, from a judgment of the Franklin County Court of *Page 2 
Common Pleas, granting the petition of plaintiff-appellee, Ohio Licensed Beverage Association ("OLBA"), for a permanent injunction.
 {¶ 2} On November 7, 2006, Ohio voters approved a ballot initiative to enact the provisions of R.C. Chapter 3794.01 et seq., titled "The SmokeFree Workplace Act" (hereafter "the SmokeFree Act" or "the Act"). According to the stated purpose of the SmokeFree Act, "it is in the best interests of public health that smoking of tobacco products be prohibited in public places and places of employment[.]" R.C. 3794.04. The Act includes certain exemptions relating to private residences, family businesses, tobacco stores, some hotel rooms, patios, smoking areas for residents of nursing homes, and "private clubs." R.C. 3794.03.
 {¶ 3} Pursuant to R.C. 3794.07, the director of ODH was required, within six months of the effective date of the Act (December 7, 2006), to promulgate rules to implement and enforce all provisions of R.C. Chapter 3794. On March 21, 2007, ODH issued rules and regulations regarding the implementation and enforcement of the SmokeFree Act.
 {¶ 4} On April 13, 2007, OLBA filed a complaint against ODH and its director (collectively "appellants"), seeking a declaratory judgment, injunctive relief, and a petition for a writ of mandamus. In the complaint, OLBA alleged that ODH had attempted to improperly expand a limited statutory exemption to the SmokeFree Act so as "to create an expansive loophole for `private clubs' that threatens to fundamentally erode the smoking ban enacted by the people, and give so-called `private clubs' a massive competitive and commercial advantage over other Ohio businesses." More specifically, OLBA challenged ODH's promulgation of Ohio Adm. Code 3701-52-04(G), asserting that *Page 3 
the rule changed the limited, clearly defined "private club" exemption set forth in the statute by adding the following language: "For purposes of this exemption, the term employees does not include members of the private club who provide services to the private club."
 {¶ 5} On April 16, 2007, OLBA filed an amended complaint. On April 30, 2007, the trial court issued a temporary restraining order enjoining ODH from implementing and/or enforcing Ohio Adm. Code 3701-52-04(G).
 {¶ 6} On May 14, 2007, the trial court conducted a hearing on the matter, and the parties submitted briefs in support. On May 17, 2007, the trial court issued a decision and entry granting OLBA's petition for a permanent injunction, finding that OLBA had standing to bring the petition, and that ODH had exceeded its authority in promulgating Ohio Adm. Code 3701-52-04(G). The court thereby enjoined ODH and its director from implementing and enforcing that part of Ohio Adm. Code 3701-52-04(G) that states: "For purposes of this exemption, the term employees does not include members of the private club who provide services to the private club." The court's entry further provided that its decision "shall have no other effect on the enforcement of any provision of R.C. 3794 or the rules promulgated pursuant to it."
 {¶ 7} On June 11, 2007, appellants filed a notice of appeal from the trial court's entry. On June 18, 2007, OLBA filed a notice of cross-appeal, and notice of conditional cross-appeal. On September 24, 2007, this court granted a motion by the Ohio Restaurant Association to file an amicus brief.
 {¶ 8} On appeal, appellants set forth the following two assignments of error for this court's review: *Page 4 
 Assignment of Error No. One — The trial court erred in holding that R.C. Chapter 3794 does not include a private club exemption.
 Assignment of Error No. Two — The trial court erred in finding that Appellee/Cross-Appellant OLBA had standing to sue.
 {¶ 9} In its brief in response to appellants' assignments of error, OLBA raises the following conditional cross-assignment of error:
 If defendants are granted relief in the form of a holding that the Ohio Smoke Free Workplace Act is so internally flawed as to require amendment through agency rule, then the entirety of the Act should be stricken as void for vagueness and violative of due process.
 {¶ 10} On cross-appeal, OLBA sets forth the following two cross-assignments of error:
 I.The Trial Court Erred In Denying Plaintiff's Motion In Limine To Exclude 2006's State Issue 5 Ballot Language From This Case, Given That Ohio's Constitution Establishes That The Time For Challenging Ballot Language Had Long Since Passed.
 II.The Trial Court Erred In Granting Defendants' Motion To Quash Plaintiff's Subpoena For Trial Testimony From The Acting Director Of The Ohio Department Of Health, A Named Party In This Matter.
 {¶ 11} We begin with appellants' two assignments of error, which we will address in inverse order. Under their second assignment of error, appellants challenge the trial court's finding that OLBA had standing to bring the underlying complaint. Appellants argue that OLBA, as a trade organization suing on behalf of itself and its members, did not meet the requirements of associational standing necessary to challenge the private club exemption. Appellants maintain that OLBA's assertion its members would suffer injury is insufficient to confer standing. *Page 5 
 {¶ 12} This court has previously noted that a permanent injunction "is an equitable remedy that will be granted only where the act sought to be enjoined will cause immediate and irreparable injury to the complaining party and there is no adequate remedy at law." Franklin Cty. Dist. Bd.of Health v. Paxson, 152 Ohio App.3d 193, 2003-Ohio-1331, at ¶ 25. An appellate court's standard of review involving an appeal from a trial court's granting of an injunction "is whether the trial court abused its discretion in granting equitable relief." Ohio Water Dev. Authority v.Western Reserve Water Dist, Franklin App. No. 05AP-954, 2006-Ohio-2681, at ¶ 9. Further, "[i]n an action seeking a temporary or permanent injunction, the plaintiff must prove its case by clear and convincing evidence." Id.
 {¶ 13} R.C. 2721.03 provides in part that "any person whose rights, status, or other legal relations are affected by a * * * rule as defined in section 119.01 of the Revised Code * * * may have determined any question of construction or validity arising under the * * * rule * * * and obtain a declaration of rights, status, or other legal relations under it." In Burger Brewing Co. v. Liquor Control Comm. (1973),34 Ohio St.2d 93, paragraph one of the syllabus, the Ohio Supreme Court held:
 An action for a declaratory judgment to determine the validity of an administrative agency regulation may be entertained by a court, in the exercise of its sound discretion, where the action is within the spirit of the Declaratory Judgment Act, a justiciable controversy exists between adverse parties, and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost.
 {¶ 14} In Thompson v. Hayes, Franklin App. No. 05AP-476,2006-Ohio-6000, at ¶ 56-57, this court addressed the requirements for standing in an action brought by a trade association, holding in relevant part: *Page 6 
 * * * [A] trade association that has not suffered any injury nonetheless has standing on behalf of its members if (a) its members would otherwise have standing to sue in their own right; (b) the interests the association seeks to protect are germane to the association's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington State Apple Advertising Comm. (1977), 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383; Ohio Hosp. Assoc. v. Community Mut. Ins. Co.
(1987), 31 Ohio St.3d 215, 218, 31 Ohio B. 411, 509 N.E.2d 1263.
 "However, to have standing, the association must establish that its members have suffered actual injury." Ohio Contractors Assn. v. Bicking
(1994), 71 Ohio St.3d 318, 320, 643 N.E.2d 1088, citing Simon v. E. Kentucky Welfare Rights Org. (1976), 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450. Thus, "[t]he association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin (1975), 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343, citing Sierra Club v. Morton (1972), 405 U.S. 727, 734-741, 92 S.Ct. 1361, 31 L.Ed.2d 636.
 {¶ 15} The trial court, in addressing appellants' challenge to the standing of OLBA, held in its decision as follows:
 * * * If a permanent injunction is not granted, Plaintiff's members, who include bars that are subject to the same law as private clubs, will be treated differently under the law. Private clubs will be able to circumvent the SmokeFree Act while Plaintiff's members will not. This is an injury to Plaintiff's members' property rights and their basic ability to compete on a level playing field as dictated by law. Regardless of how much Rule 3701-52-4(G), as it is currently written, is subject to actual abuse, Plaintiff's members will suffer injury. Furthermore, as general members of the public, Plaintiff's members have an interest in seeing that the SmokeFree Act is properly administered and is properly used as it was intended, i.e. to protect employees from the harmful effects of cigarette smoke in the workplace. It is the opinion of the Court that Plaintiff and its members possess ample grounds for standing in the present matter. *Page 7 
 {¶ 16} Regarding the second prong of the standing test noted inThompson, supra, we have little difficulty finding that the interests OLBA seeks to protect are germane to the association's purpose. In support of their standing argument, OLBA submitted the affidavit of Jacob Evans, the governmental affairs director of OLBA. Evans averred that OLBA is an Ohio trade association with approximately 500 members, including bar and restaurant owners, who hold a variety of different liquor permits. He further averred that the purpose of OLBA is to protect and advance the interests of retail liquor permit holders in Ohio. In its petition for injunctive relief, the trade association challenged ODH's promulgation of Ohio Adm. Code 3701-52-4(G) on the premise that it created an exemption, not included in the statute, that provided an unfair business advantage to private clubs over retail liquor permit holders.
 {¶ 17} As to the third prong of the standing test, there is no apparent reason why the claims or relief asserted requires participation of individual members. The remaining issue, therefore, is whether OLBA's members would otherwise have standing to sue in their own right, i.e., whether the trade association has demonstrated its members have suffered immediate or threatened injury as a result of the challenged action.Thompson, supra, at ¶ 57.
 {¶ 18} As noted, the trial court found that OLBA had standing based upon injury to its members' property rights and the ability of members to compete with other establishments holding liquor permits as a result of the regulation promulgated by ODH. In addition to the affidavit of Evans, the record also contains affidavits submitted by individual members of OLBA, including Matt D. Coffland, the owner and operator of the "Tiger Pub," located in Shady Side, Ohio. *Page 8 
 {¶ 19} According to Coffland, approximately 75 percent of his clientele is comprised of individuals who smoke, and on the first day of the smoking ban many of his customers left his establishment when informed they were unable to smoke. Coffland averred that many of his customers will stop frequenting his establishment "altogether if there is an alternative place where they can smoke and drink at the same time," and that these customers "will not return * * * if given an alternative place such as a private club with employees where they can drink and smoke for a sustained period of time." (Coffland Affidavit, at ¶ 17.) He further averred that "[t]his loss of customer loyalty and goodwill will be irreparable to me," and he believed, based upon his experience in the community, that at least two of Shady Side's four bars will have to close as a result of the loss of business if private clubs, with employees who are also members, are allowed to permit smoking in their establishment. Id.
 {¶ 20} Michael Beans, the owner of a sports bar, averred in an affidavit he had suffered a loss of customers (approximately 33 percent) since the SmokeFree Act went into effect, and that the decline in his clientele had been made worse by the fact that private clubs in the area had continued to allow smoking. According to Beans, he will not be able to continue in business "with a 33% drop off in my business as a result of customers leaving my establishment for the private clubs with employees across the street, where they can smoke." (Beans Affidavit, at ¶ 17.)
 {¶ 21} Upon review, we find in the instant case that the trade association sufficiently alleged facts that at least one of its members is suffering immediate or threatened injury as a result of the challenged action. Courts have recognized standing to sue based upon a trade association's claim of economic injury to its members from unfair *Page 9 
competition resulting from an alleged invalid action by an agency. SeeNatl. Tank Truck Carriers v. Lewis (D.C. Cir.1982), 550 F.Supp. 113, 117
(trade association had standing in action seeking to invalidate an administrative rule; a competitor has standing to challenge lost profits, and "threatened economic injury produced by unlawful competition raises a justifiable controversy"); United States TelecomAssn. v. F.C.C. (D.C. Cir.2002), 295 F.3d 1326, 1331 (parties suffer injury when agencies allow increased competition against them); In reU.S. Catholic Conference (C.A.2, 1989), 885 F.2d 1020, 1029 (noting the United States Supreme Court has "found cognizable injuries to economic competitors" where a plaintiff-party shows it competes in same arena with party to whom government has bestowed an asserted benefit);Office of Consumer Counsel v. Southern New England Telephone Co.
(D.Conn. 2007), 502 F.Supp.2d 277, 284-285 (plaintiffs demonstrated standing to challenge public utility agency regulation in alleging injury by actions of agency where its decision "has created the claimed unequal playing field and unfair competitive scenario").
 {¶ 22} Finally, we note that the record indicates OLBA participated to some degree in the rule-making process in this matter. Specifically, Evans averred that OLBA has "taken an active interest in the smoking ban issue in Ohio, and has been directly involved in several legislative, ballot, and litigation issues connected to the smoking ban issue, expending considerable time and resources in the process." (Evans Affidavit, at ¶ 7.) Evans served as the OLBA's representative on the advisory committee convened by ODH to discuss the smoking ban and the proposed rules. ODH itself, in its May 9, 2007 memorandum in opposition to OLBA's motion for preliminary injunction, noted that this advisory committee was "comprised of businesses and trade associations, health *Page 10 
organizations, and health officials to provide input for ODH to draft rules for implementing R.C. Chapter 3794."
 {¶ 23} Here, we conclude that OLBA presented sufficient evidence that a justiciable controversy exists, and that its members would otherwise have standing to sue in their own right. Accordingly, we find that the trial court did not err in finding on this record that standing requirements to bring a declaratory judgment were satisfied.
 {¶ 24} Based upon the foregoing, appellants' second assignment of error is without merit and is overruled.
 {¶ 25} We next consider appellants' first assignment of error, in which it is asserted the trial court erred in holding that the SmokeFree Act does not include a private club exemption. Appellants argue that the trial court erred in finding clear and unambiguous the definition of "employee," under R.C. 3794.01(D), and the language of the private club exemption, found under R.C. 3794.03(G). Appellants maintain that those provisions are ambiguous and in conflict, and that the trial court should have interpreted the statutes in a manner that gives full force and effect to all provisions of the Act. According to ODH, it drafted a rule designed to clarify this statutory conflict, and to prevent the private club exemption from being nullified.
 {¶ 26} The Ohio Supreme Court has observed that "[t]he purpose of administrative rulemaking is to facilitate an administrative agency's placing into effect the public policy embodied in legislation to be administered by the agency." Amoco Oil Co. v. Petroleum UndergroundStorage Tank Release Comp. Bd. (2000), 89 Ohio St.3d 477, 483. A rule adopted by an administrative agency is "valid and enforceable unless unreasonable or in conflict with the statutory enactment covering the same subject matter." Id., at 484. See, *Page 11 
also, Sterling Drug, Inc. v. Wickham (1980), 63 Ohio St.2d 16, 19 (in considering the validity of an agency rule, the ultimate test is whether the agency rule "is unreasonable or unlawful"). A rule promulgated by an administrative agency may be found invalid as unreasonable and unlawful for "various reasons," including the reason that the agency's rule "exceeded the rule making authority delegated by the General Assembly." Id. In this respect, "an administrative rule cannot add or subtract from the legislative enactment." Amoco Oil, supra, at 484.
 {¶ 27} We begin by noting the relevant portions of the SmokeFree Act. The general purpose of the Act is set forth in R.C. 3794.04, which states as follows:
 Because medical studies have conclusively shown that exposure to secondhand smoke from tobacco causes illness and disease, including lung cancer, heart disease, and respiratory illness, smoking in the workplace is a statewide concern and, therefore, it is in the best interests of public health that smoking of tobacco products be prohibited in public places and places of employment and that there be a uniform statewide minimum standard to protect workers and the public from the health hazards associated with exposure to secondhand smoke from tobacco.
 The provisions of this chapter shall be liberally construed so as to further its purposes of protecting public health and the health of employees and shall prevail over any less restrictive state or local laws or regulations. Nothing in this chapter shall be construed to permit smoking where it is otherwise restricted by other laws or regulations.
 {¶ 28} R.C. 3794.02(A) provides as follows:
 No proprietor[1] of a public place or place of employment, except as permitted in section 3794.03 of this chapter, shall permit smoking in the public place or place of employment or in the areas directly or indirectly under the control of the *Page 12 
proprietor immediately adjacent to locations of ingress or egress to the public place or place of employment.
 {¶ 29} R.C. 3794.03 lists the specific exemptions under the Act. Those exemptions pertain to "private residences," sleeping rooms in hotels, motels, and other lodging facilities, certain "family-owned and operated places of employment," nursing homes, retail tobacco stores, outdoor patios, and "private clubs."
 {¶ 30} The exemption for "private clubs," R.C. 3794.03, states as follows:
 The following shall be exempt from the provisions of this chapter:
 (G) Private clubs as defined in section 4301.01(B)(13) of the Revised Code, provided all of the following apply: the club has no employees; the club is organized as a not for profit entity; only members of the club are present in the club's building; no persons under the age of eighteen are present in the club's building; the club is located in a freestanding structure occupied solely by the club; smoke from the club does not migrate into an enclosed area where smoking is prohibited under the provisions of this chapter; and, if the club serves alcohol, it holds a valid D4 liquor permit.
 {¶ 31} Ohio Adm. Code 3701-52-04(G), the rule challenged by OLBA in this lawsuit, essentially tracks the language of R.C. 3794.03(G) with the exception of the final sentence. In its entirety, Ohio Adm. Code3701-52-04(G) states:
 Private clubs shall be exempt from the provisions of Chapter 3794. of the Revised Code and Chapter 3701-52 of the Administrative Code provided all of the following apply: the club has no employees; the club is organized as a not for profit entity; only members of the club are present in the club's building; no persons under the age of eighteen are present in the club's building; the club is located in a freestanding structure occupied solely by the club; smoke from the club does not migrate into an enclosed area where smoking is prohibited under the provisions of this chapter; and, if the club serves alcohol, it holds a valid D4 liquor permit. For purposes of this exemption, the term employees does not include *Page 13 members of the private club who provide services to the private club. (Emphasis added.)
 {¶ 32} The SmokeFree Act sets forth definitions of "employer," "employee" and "place of employment." R.C. 3794.01(C) defines "place of employment" as follows:
 "Place of employment" means an enclosed area under the direct or indirect control of an employer that the employer's employees use for work or any other purpose, including but not limited to, offices, meeting rooms, sales, production and storage areas, restrooms, stairways, hallways, warehouses, garages, and vehicles. An enclosed area as described herein is a place of employment without regard to the time of day or the presence of employees.
 {¶ 33} R.C. 3794.01(E) defines "employer" to mean "the state or any individual, business, association, political subdivision, or other public or private entity, including a nonprofit entity, that employs or contracts for or accepts the provision of services from one or more employees." Pursuant to R.C. 3794.01(D), an "employee" is defined to mean "a person who is employed by an employer, or who contracts with an employer or third person to perform services for an employer, or who otherwise performs services for an employer for compensation or for no compensation."
 {¶ 34} In the present case, the trial court found that ODH exceeded its rule-making authority by promulgating the last sentence set forth in Ohio Adm. Code 3701-52-04(G). Specifically, the court held in relevant part:
 * * * The "private club" exemption found in R.C. 3794.03(G) does not state that members of a private club are exempt from the definition of "employee." R.C. 3794.01(D), defining "employee," does not exclude members of private clubs from its definition. Therefore, the disputed language found in Rule 3701-52-04(G) exempting private club members from the definition of "employee" is in addition to the language passed in the SmokeFree Act and is invalid on its face. This is a *Page 14 
simple case of looking at the plain language of R.C. 3794.03(G) and R.C. 3794.01(D), and seeing that Rule 3701-52-04(G) improperly adds to it. Defendant, the Ohio Department of Health, exceeded its authority in drafting the disputed language found in Rule 3701-52-04(G). * * *
 {¶ 35} We agree with the trial court that ODH, in promulgating a rule excluding members of private clubs (who provide services to the club) from the definition of "employee," impermissibly added to the scope of the exemption for private clubs under the Act. Appellants' assertion that the trial court erred in holding the provisions of R.C. 3794.01(D) and 3794.03(G) to be unambiguous is not persuasive. The statutory exemption provided a private club under the Act is narrowly drawn, subject to a number of specific conditions, including the condition that a club has "no employees." Conversely, the definition of employee under R.C. 3794.01(D) is broad, apparently reflecting intent on the part of the Act's drafters to afford wide protection to Ohio workers in places of employment. Despite the Act's broad definition of employee, and the resulting narrow exemption for private clubs, the statutory language is neither ambiguous nor lacking in clarity. As noted by the court, R.C.3794.03(G) does not provide that members of a private club are exempt from the definition of "employee," nor does the language of R.C.3794.01(D) exclude members of private clubs from the definition of "employee." The rule as promulgated by ODH, however, expands the statutory exemption by defining "employee" to "not include members of the private club who provide services to the private club." Because the SmokeFree Act did not exclude members of a private club from the definition of employee, the rule conflicts with the clear, unambiguous language of the enactment and constitutes an impermissible addition to the Act. *Page 15 
 {¶ 36} We note that appellants express apparent agreement with a portion of the trial court's decision suggesting that the statute, as enacted, contains an exemption in name only. Appellants argue that ODH, in an effort to reconcile a statutory conflict that essentially rendered the private club exemption a nullity, gave meaning to the private club exemption through promulgation of Ohio Adm. Code 3701-52-04(G). Specifically, appellants assert a conflict exists between R.C.3794.03(G), requiring that a private club have "no employees" as a condition for exemption, and R.C. 3794.01(D), which defines employee to include individuals who perform services whether compensated or not.
 {¶ 37} In response, OLBA argues that appellants' conflict argument fails to give recognition to the language of R.C. 3794.02, which provides in part that no proprietor shall permit smoking in a "place of employment," and R.C. 3794.01(C), defining "place of employment" as meaning an enclosed area "under the direct or indirect control of an employer." OLBA maintains that the smoking ban only extends to places of employment under the control of an employer; thus, in the absence of a relationship in which a party has the ability to supervise or control another, a member of a club performing services would not be considered an employee under the Act.
 {¶ 38} OLBA's focus on the issue of control raises common law employer-employee/master-servant concepts. OLBA's reliance upon such principles arguably has some support by the language utilized in R.C.3794.01(D), defining an "employee," in part, as meaning a person who "performs services for an employer," and as "a person who is employed by an employer." In Nationwide Mut. Ins. Co. v. Darden (1992),503 U.S. 318, 112 S.Ct. 1344, in considering a statute that defined an "employee" as "any individual employed by an employer," the United States Supreme Court applied the *Page 16 
common law of agency and considered a party's "right to control the manner and means by which the product is accomplished." Restatement of the Law, Agency (1933) Section 220(1), defines a "servant" as "a person employed to perform service for another" and who, with respect to his or her physical conduct in the performance of such service, "is subject to the other's control or right to control."[2] In the instant case, while we view the trial court's discussion as to the practical effect of the Act's private club exemption as dicta, we nevertheless find persuasive OLBA's argument that the concept of control, as utilized under master-servant principles, and at minimum suggested by the Act's definition of "place of employment," is relevant to the issue of an employer-employee relationship under the Act.
 {¶ 39} However, even assuming a conflict between statutory provisions in the Act, an agency may not, in response, enact a rule that is in conflict with a statute. Columbus Southern Ohio Elec. Co. v. Indus.Comm. (1992), 64 Ohio St.3d 119, 122. Under Ohio law, "an administrative agency has only such regulatory power as is delegated to it by the General Assembly." D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. ofHealth, 96 Ohio St.3d 250, 2002-Ohio-4172, at ¶ 38. Further, "[administrative regulations cannot dictate public policy but rather can only develop and administer policy already established," and an agency may not engage in "policy-making requiring a balancing of social, political, economic, and privacy concerns" which are legislative in nature. Id., at ¶ 41.
 {¶ 40} ODH maintains that it created a rule that permits club membership to take precedence over the statutory definition of "employee," and that in doing so it protected *Page 17 
the spirit and purpose of the SmokeFree Act. However, in defining "employee" in the manner it did, ODH created a rule that not only conflicts with the enabling statute, creating an exemption that did not exist, but that is also at odds with the broadly stated purpose of the SmokeFree Act, i.e., that it is in the best interest of public health that smoking be prohibited in public places and "places of employment." R.C. 3794.04. Moreover, the rule is contrary to the Act's prescription that its provisions "shall be liberally construed so as to further its purposes * * * and shall prevail over any less restrictive state or local laws or regulations." Id. ODH's exclusion of "members of the private club" from the definition of employees created a "less restrictive" definition of employee, and in doing so the agency exceeded its rule-making authority.
 {¶ 41} We recognize the difficulties presented to an agency charged with the task of promulgating rules in response to petition initiatives such as the SmokeFree Act, and in seeking to harmonize the various provisions therein. ODH's efforts in this case, however, went beyond health-related concerns and reached legislative functions involving the balancing of social and economic concerns. Assuming that the SmokeFree Act falls short of providing the exemption contemplated by the agency or other groups, any potential change to the exemption as enacted would be a matter for the legislature, not the administrative agency, to address.
 {¶ 42} Upon review, we agree with the trial court that ODH exceeded its authority in enacting the last sentence of Ohio Adm. Code3701-52-04(G), and we find no abuse of discretion by the trial court in granting OLBA's petition for a permanent injunction, thereby enjoining appellants from implementing and enforcing that portion of the rule that states: "For purposes of this exemption, the term employee does not include members of the *Page 18 
private club who provide services to the private club." Accordingly, appellants' first assignment of error is not-well taken and is overruled.
 {¶ 43} In light of our disposition of appellants' assignments of error, OLBA's conditional cross-assignment of error and its two cross-assignments of error are hereby rendered moot.
 {¶ 44} Based upon the foregoing, appellants' first and second assignments of error are overruled, OLBA's conditional cross-assignment of error and its two cross-assignments of error are moot, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
McGRATH and TYACK, JJ., concur.
[1] A "proprietor" is defined under R.C. 3794.01(G) to mean "an employer, owner, manager, operator, liquor permit holder, or person in charge or control of a public place or place of employment."
[2] The fact that a statute may define a term more broadly than the common law does not preclude reliance upon common law principles. SeeHull v. Paige Temp. Inc. (N.D.Ill. 2005), No. 04 C 5129 (although definition of "employer" under Title VII and the ADEA is broader than it is under the common law, court will still look to common law agency principles to determine if party is an "employer"). *Page 1