[Cite as *In re Acubens, L.L.C.*, 2018-Ohio-2607.]

# IN THE COURT OF APPEALS OF OHIO

# TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| Acubens, LLC, | | No. 17AP-870 |
| | : | (Prob. No. 582975) |
| Transferee-Appellant. | | |
| | : | (ACCELERATED CALENDAR) |
| | | |
| In re: | : | |
| Acubens, LLC, | | No. 17AP-877 |
| | : | (Prob. No. 582985) |
| Transferee-Appellant. | | |
| | : | (ACCELERATED CALENDAR) |
| | | |
| In re: | : | |
| Acubens, LLC, | | No. 17AP-906 |
| | : | (Prob. No. 582983) |
| Transferee-Appellant. | | |
| | : | (ACCELERATED CALENDAR) |

---

# D E C I S I O N

### Rendered on June 29, 2018

---

**On brief:** *Steven W. Mastrantonio*, for appellant. **Argued:** *Steven W. Mastrantonio*.

**On brief:** *Michael DeWine*, Attorney General, and *Charles E. Febus*, for appellee Ohio Lottery Commission. **Argued:** *Charles E. Febus*.

---

APPEALS from the Franklin County Court of Common Pleas, Probate Division

DORRIAN, J.

{¶ 1} In this consolidated matter, appellant, Acubens, LLC ("Acubens"), appeals three judgments of the Franklin County Court of Common Pleas, Probate Division, which

denied Acubens's three applications to receive transfers of future prize installment payments from the Ohio Lottery Commission ("Lottery Commission").

## I. Facts and Procedural History

{¶ 2}   Non-parties, Patrick L. Berry, Sr., Donteze Morris, and Michael Yopko (collectively referred to as "prize winners"), won prizes in the Ohio lottery.  All three prize winners elected to receive their lottery prize winnings in installment payments over time.  All three prize winners then proceeded over time to sell, assign, or redirect some or all of their future prize installment payments.  In order to do this, title to the future prize installment payments had to be transferred to the persons or entities receiving the payments.  After the initial transfer by the prize winners, the same Berry, Morris, and Yopko future prize installment payments were transferred multiple times again.  Ultimately, an agreement was made to transfer the same future prize installment payments to Acubens.

{¶ 3}   On January 30, 2017, Acubens filed in the trial court applications for approval of the transfer of numerous future lottery prize installments payments.  The Lottery Commission intervened, and on July 13, 2017, the Lottery Commission filed a brief opposing the applications to transfer. On July 14, 2017, Acubens filed a brief in support of the applications to transfer. On August 10, 2017, the parties filed joint stipulations of fact. According to the joint stipulations, Acubens entered into a Lottery Receivables Purchase and Sale Agreement ("the agreement") with two entities, B of I Lottery Receivables LLC I ("B of I") and Travilah Road Titling Trust ("Travilah") (collectively, "the transferors") for the purpose of transferring future prize installment payments from 32 awards from the transferors to Acubens.

{¶ 4}   According to the joint stipulations, the transferors "acquired the rights to receive the 32 prize awards from Ohio 'prize winners' as defined in the Ohio Lottery Act." (Joint Stip. at 1.)  The trial court previously granted 20 of 32 applications to transfer.  The Lottery Commission objected to the remaining 12[1] applications, including the applications to transfer the future prize installments from the Berry, Morris, and Yopko awards at issue in the present appeal.

---

[1] Regarding the applications not at issue in this appeal, the Lottery Commission agreed that the prize winners previously sold all their payments and there was no remainder left to sell.

{¶ 5}    The parties agreed that "B of I and Travilah are 'transferors' as defined in R.C. 377[0].10(H) in the [3] transactions presently before the Court." (Joint Stip. at 1.)

{¶ 6}    The joint stipulations provided additional details relevant to each of the three prize winners' awards. Berry previously made three transfers, in addition to the retitling transfer from the transferors to Acubens at issue in the present appeal. Berry had no remainder from his award. Yopko previously made three transfers and there was one "retitling transfer from [B of I] to Acubens on October 26, 2016," in addition to the retitling transfer from the transferors to Acubens at issue. (Joint Stip. at 2.) Yopko had a remainder from the original award. Morris previously made three transfers and "[t]here was a retitling transfer on July 28, 2016," in addition to the proposed retitling transfer from the transferors to Acubens. (Joint Stip. at 3.) Morris had a remainder from the original award.

{¶ 7}    On August 15, 2017, the magistrate filed decisions denying the requests to transfer the Berry, Morris, and Yopko future prize installment payments. On August 29, 2017, Acubens filed objections to the magistrate's August 15, 2017 decisions. On November 16, 2017, the trial court filed decisions overruling the objections to the magistrate's decisions and adopting the magistrate's decisions filed August 15, 2017.

## II.  Assignment of Error

{¶ 8}    Acubens appeals and assigns the following single assignment of error for our review:

> The Trial Court erred as a matter of law when it concluded that all transfers are subject to the restrictions contained in R.C. § 3770.121.

## III.  Discussion

{¶ 9}    In its assignment of error, Acubens argues the trial court erred in applying R.C. 3770.121 to bar the transfers at issue. Specifically, Acubens contends the restrictions, pursuant to R.C. 3770.121, on the number of allowable transfers apply only to "prize winners" as that term is defined by R.C. 3770.10. The Lottery Commission responds that R.C. 3770.121, when considered in conjunction with Ohio Adm.Code 3770:1-8-01(B)(5), applies to bar the transfers.

## A. Applicable Law and Standard of Review

{¶ 10} R.C. Chapter 3770 governs the state lottery, including the Lottery Commission. R.C. 3770.03(A) vests the Lottery Commission with authority to promulgate rules regarding subjects delegated to its authority, providing in part:

> The state lottery commission shall promulgate rules under which a statewide lottery may be conducted, which includes, and since the original enactment of this section has included, the authority for the commission to operate video lottery terminal games. * * * The rules shall be promulgated pursuant to Chapter 119. of the Revised Code, except that instant game rules shall be promulgated pursuant to section 111.15 of the Revised Code but are not subject to division (D) of that section. Subjects covered in these rules shall include, but need not be limited to, the following:
>
> (1) The type of lottery to be conducted;
>
> (2) The prices of tickets in the lottery;
>
> (3) The number, nature, and value of prize awards, the manner and frequency of prize drawings, and the manner in which prizes shall be awarded to holders of winning tickets.

{¶ 11} Generally, "administrative rules do not dictate public policy, but rather expound upon public policy already established by the General Assembly in the Revised Code." *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 567 (1998). The purpose of administrative rulemaking is to facilitate an administrative agency's placing into effect the public policy embodied in legislation to be administered by the agency. *AMOCO Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.*, 89 Ohio St.3d 477, 483 (2000). "Administrative agencies may make only 'subordinate' rules." *Chambers* at 567, quoting *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329, 342-43 (1944).

{¶ 12} Courts generally accord deference to an administrative agency's interpretation of its own administrative rules. *HCMC, Inc. v. Ohio Dept. of Job & Family Servs.*, 179 Ohio App.3d 707, 2008-Ohio-6223, ¶ 24 (10th Dist.). This deference is based on recognition that "[t]he General Assembly created these administrative bodies to facilitate certain areas of the law by placing the administration of those areas before boards or commissions composed of individuals who possess special expertise." *Salem v. Koncelik*, 164 Ohio App.3d 597, 2005-Ohio-5537, ¶ 16 (10th Dist.). *See also Chambers* at

567 (stating that "[a]dministrative agencies have the technical expertise to compose [administrative] rules").

{¶ 13} "Due deference to an administrative agency's interpretation of its own administrative rules, however, is not unfettered." *HCMC* at ¶ 25. "If an agency's interpretation is unreasonable and fails to apply the plain language of a statute or rule, then an appellate court need not defer to such an unreasonable interpretation." *Id. See AMOCO* at 484 ("Rules adopted by administrative agencies are valid and enforceable unless unreasonable or in conflict with the statutory enactment covering the same subject matter."). An appellate court exercises plenary review on questions of law. *1609 Gilsey Invests., Inc. v. Liquor Control Comm.*, 10th Dist. No. 07AP-1069, 2008-Ohio-2795, ¶ 9, citing *Chirila v. Ohio State Chiropractic Bd.*, 145 Ohio App.3d 589, 592 (10th Dist.2001).

## B. Analysis

{¶ 14} We begin our analysis by reviewing the statutory text, keeping in mind that "our paramount concern" in statutory interpretation "is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21, citing *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, ¶ 12. "In determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage." *Id.*, citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 90 Ohio St.3d 229, 231 (2000), and R.C. 1.42.

{¶ 15} R.C. 3770.121 provides:

> Any state lottery commission rules allowing lottery prize awards to be paid in installments also shall allow a *prize winner* who is being paid a prize award in that manner to transfer all or a portion of the remainder of the prize award, subject to each of the following conditions:
>
> (A) If each transfer is for less than one hundred per cent of the remainder of the prize award, the remainder of the prize award for each transfer must be five hundred thousand dollars or greater at the time of the transfer. If the lottery prize award is a lifetime prize, for each transfer the remainder of the minimum guaranteed prize to which the prize winner is entitled must be five hundred thousand dollars or greater at the time of the transfer.

(B) Payments of the prize award transferred shall be subject to the withholding or deduction of any amounts that are required to be withheld or deducted under section 3119.80, 3119.81, 3121.02, 3121.03, 3123.06, 3770.071, or 5747.062 of the Revised Code.

(C) The maximum number of transfers under this section with respect to any single prize award shall not exceed three unless a greater number has been specified by the commission in the rules.

(Emphasis added.)

{¶ 16} R.C. 3770.10, which defines terms as used throughout the section on lottery awards, provides in pertinent part:

As used in sections 3770.07 and 3770.10 to 3770.14 of the Revised Code:

(A)  "Court of competent jurisdiction" means either the general division or the probate division of the court of common pleas of the county in which the prize winner or transferor resides, or, if the prize winner or transferor is not a resident of this state, either the general division or the probate division of the court of common pleas of Franklin county or a federal court having jurisdiction over the lottery prize award.

* * *

(D)  "Prize winner" means any person that holds the right to receive all or any part of a lottery prize award as a result of being any of the following:

(1)  A person who is a claimant under division (A) of section 3770.07 of the Revised Code;

(2)  A person who is entitled to a prize award and who is under a legal disability as described in division (B) of section 3770.07 of the Revised Code;

(3)  A person who was awarded a prize award to which another has claimed title by a federal bankruptcy court order or other court order referred to in division (D) of section 3770.07 of the Revised Code;

(4) A person who is receiving payments upon the death of a prize winner as provided in division (D) of section 3770.07 of the Revised Code.

(E) "Transfer" means any form of sale, assignment, or redirection of payment of all or any part of a lottery prize award for consideration.

(F) "Transfer agreement" means an agreement that is complete and valid, and that provides for the transfer of all or any part of a lottery prize award from a transferor to a transferee.

* * *

(G) "Transferee" means a party acquiring or proposing to acquire all or any part of a lottery prize award through a transfer.

(H) "Transferor" means either a prize winner or a transferee in an earlier transfer whose interest is acquired by or is sought to be acquired by a transferee or a new transferee through a transfer.

Thus, the term "transferor" as defined by R.C. 3770.10 includes both prize winners and transferees in a prior transfer agreement between either a prize winner or another transferee. For purposes of illustration, a prize winner could enter into a transfer agreement with a transferee. That same transferee could then, as a transferor, enter into a transfer agreement with another transferee, including one without any relationship to the prize winner in the original transfer agreement. Such is the case here, as Acubens seeks to acquire the interest of the transferors who were transferees in earlier transfer agreements.

{¶ 17} Finally, Ohio Adm.Code 3770:1-8-01(B)(5) provides: "Partial assignments and/or transfers of lottery prize awards are governed by section 3770.121 of the Revised Code."

{¶ 18} Regarding the Berry, Morris, and Yopko future prize installment payments, the trial court found the proposed transfers were "forbidden * * * pursuant to R.C. 3770.121." (Nov. 16, 2017 Decisions at 11.) The trial court acknowledged Acubens's argument stating that "Acubens draws a distinction between prize winner and transferor and rightly so, the difference exists." (Nov. 16, 2017 Decisions at 8.) The court found,

however, that "[t]his definitional distinction relied upon by Acubens to justify the law not being applicable to them is nothing more than a red herring designed to confuse the issue in this case." (Nov. 16, 2017 Decisions at 8.) Instead, the court stated that "[t]he real issue in this matter is whether the applicable statutes intended for prize winners to be treated differently from transferors for purposes of whether a transfer is appropriate and for purposes of the 3 transfer restriction." (Nov. 16, 2017 Decisions at 8.)

{¶ 19} In resolving this question, the court relied on Ohio Adm.Code 3770:1-8-01(B)(5) and R.C. 3770.121. The court found that, although R.C. 3770.121 was "unambiguous," the Lottery Commission's interpretation of its regulations "makes it clear that all transfers of lottery prizes are governed by R.C. 3770.121 and not just transfers by prize winners." (Nov. 16, 2017 Decisions at 8.)  Further, the court stated "[t]his court believes that the legislature did not anticipate treating the two differently for purposes of transfer." (Nov. 16, 2017 Decisions at 8.)  The trial court supported its conclusion by stating that "[a]n interpretation that holds that all transfers of lottery prizes are governed by R.C. 3770.121 is consistent with the spirit of the law and the restrictions placed on transfer which were designed to prevent an undue burden upon the [Lottery Commission] in dealing with transfers." (Nov. 16, 2017 Decisions at 9.)  As a result, the court found the transfers were "forbidden" as "fourth * * * transfer[s] pursuant to R.C. 3770.121(C)." (Nov. 16, 2017 Decisions at 11.)

{¶ 20} Finally, the court held regarding the transfers related to the Morris and Berry's awards, "even if th[e] proposed transfer[s] would be allowable under R.C. 3770.121(C), the transfer in question would be improper pursuant to R.C. 3770.121(A) because [Morris and Berry's] account[s] lack[] the minimum amount of $500,000 required for transfer."[2] (Nov. 16, 2017 Decisions at 11.)

{¶ 21} Here, as stipulated by the parties, the transferors before us are not prize winners but, rather, " 'transferors' as defined in R.C. 377[0].10(H)." (Joint Stip. at 1.) The General Assembly's decision to define "prize winner" and "transferor" separately in R.C. 3770.10 demonstrates its intent for there to be a distinction between the two terms in the statutory sections to which they apply. This distinction is evident, for example, in R.C.

---

[2] The trial court did not provide this justification in the case related to Yopko's award, as it found, consistent with the stipulated facts, that Yopko had a "remainder of [greater than $500,000] to sell."  (Nov. 16, 2017 Decisions at 4.)

3770.12, which provides conditions for the approval of a lottery prize award "[i]f the transferor is a prize winner." R.C. 3770.12(A) and (B). This example illustrates that, while all prize winners can be transferors, not all transferors need be prize winners.

{¶ 22} R.C. 3770.121, the statutory provision relied on by the Lottery Commission and trial court to deny the transfers at issue, states that "[a]ny state lottery commission rules allowing lottery prize awards to be paid in installments also shall allow a *prize winner* who is being paid a prize award in that manner to transfer all or a portion of the remainder of the prize award, subject to each of the following conditions."  (Emphasis added.)  Thus, the plain language of R.C. 3770.121 only regulates transfers by prize winners, as that term is defined in R.C. 3770.10, not transfers by transferees, now transferors, in an earlier transfer. *Hoffman v. State Med. Bd.*, 113 Ohio St.3d 376, 2007-Ohio-2201, ¶ 26, quoting R.C. 1.42 (stating that " '[w]ords * * * that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly' ").

{¶ 23} The Lottery Commission nonetheless argues that Ohio Adm.Code 3770:1-8-01(B)(5) makes it clear that R.C. 3770.121 is intended to apply to any transferor. As previously noted, Ohio Adm.Code 3770:1-8-01(B)(5) provides: "Partial assignments and/or transfers of lottery prize awards are governed by section 3770.121 of the Revised Code." Although we defer to the Lottery Commission's interpretation of its rules, such deference does not extend to the plain language of the statute.

{¶ 24} The Lottery Commission's interpretation of R.C. 3770.121 would essentially amend the statute's use of the term "prize winner" to "transferor." However, administrative agencies may not add to or subtract from a legislative enactment. *Teamsters Local Union No. 348 v. Cuyahoga Falls Clerk of Court*, 10th Dist. No. 10AP-728, 2011-Ohio-2416, ¶ 22 (invalidating administrative agency's statutory interpretation that added a requirement to statute). *See also Vargas v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-872, 2012-Ohio-2735, ¶ 13, citing *Cent. Ohio Joint Vocational School Dist. Bd. of Edn. v. Ohio Bur. of Emp. Servs.*, 21 Ohio St.3d 5, 10 (1986); *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, ¶ 39; *AMOCO* at 484 (finding that "administrative rule cannot add or subtract from the legislative enactment"). Similarly, were we to accept the Lottery Commission's interpretation of "prize winner" to include all transferors, the separate definition of prize winner in R.C. 3770.10 would be rendered mere surplusage as applied to R.C. 3770.121.  *See*

*also D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 26 (stating "[a] basic rule of statutory construction requires that 'words in statutes should not be construed to be redundant, nor should any words be ignored,' " so that "[n]o part should be treated as superfluous unless that is manifestly required"); *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 7 (avoiding interpreting a statute as containing "surplusage" and instead giving "effect to the words used"); *Huntington Natl. Bank v. 199 S. Fifth St. Co., LLC*, 10th Dist. No. 10AP-1082, 2011-Ohio-3707, ¶ 18; *State v. Ryan*, 8th Dist. No. 98005, 2012-Ohio-5070, ¶ 15 (noting that courts avoid statutory interpretations that render statutory language surplusage). Had the General Assembly intended for the restrictions on transfers in R.C. 3770.121 to apply to all transferors, instead of only prize winners, it clearly knew how to do so.

{¶ 25} The Lottery Commission's interpretation of R.C. 3770.121 also leads to absurd or unreasonable results. If R.C. 3770.121 applies to all transferors as suggested by the Lottery Commission, a prize winner could be limited to only one transfer, despite otherwise complying with the provisions of R.C. 3770.121. For example, a prize winner could transfer a portion of his or her award to a transferee. That same transferee could then as a transferor complete two additional transfers of the award. Thus, even if the prize winner is not a party to any subsequent transfers and otherwise in compliance with R.C. 3770.121(A), the prize winner would be prevented by R.C. 3770.121(C) from making additional transfers of the remainder of his or her award. Such a result is incongruous with the intention of the General Assembly as expressed in the plain language of R.C. 3770.121 and would create confusion and uncertainty on the part of prize winners regarding their ability to make subsequent transfers. R.C. 1.47(C). *See also State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 20 (stating that courts "must avoid statutory interpretations that create absurd or unreasonable results" and "should also avoid interpretations that create confusion or uncertainty"); *Burroughs v. Ohio Dept. of Adm. Servs.*, 10th Dist. No. 12AP-522, 2013-Ohio-3261, ¶ 32.

{¶ 26} Moreover, according to the stipulated facts, two prize awards previously approved by a court had already been transferred for a fourth time in 2016. The Lottery Commission does not offer an explanation for those transfers consistent with its interpretation of Ohio Adm.Code 3770:1-8-01(B)(5) and R.C. 3770.121. As such, it is

unclear whether the Lottery Commission has changed its interpretation subsequent to those transfers.

{¶ 27} In conclusion, we find that, based on the plain language of R.C. 3770.121 in conjunction with R.C. 3770.10, the trial court erred in barring the transfers at issue. *HCMC* at ¶ 25. *See also Guethlein v. Ohio State Liquor Control Comm.*, 10th Dist. No. 05AP-888, 2006-Ohio-1525, ¶ 24. Accordingly, we sustain Acubens's assignment of error.

## IV. Conclusion

{¶ 28} Having sustained Acubens's single assignment of error, we reverse the judgments of the Franklin County Court of Common Pleas, Probate Division, and remand these matters to that court for further proceedings consistent with law and this decision.

*Judgments reversed;*
*cause remanded.*

BROWN, P.J., and BRUNNER, J., concur.