[Cite as *Thomas v. Logue, Admr. of Ohio Bur. of Workers' Comp.*, 2022-Ohio-1603.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Lamar Thomas,                          :

    Plaintiff-Appellant,          :

                                      No. 21AP-385

v.                                     :     (Ct. of Cl. No. 2021-00112JD)

John Logue, Administrator,             :     (REGULAR CALENDAR)
Ohio Bureau of Workers' Compensation,

                                      :

    Defendant-Appellee.          :

                                      :

D E C I S I O N

Rendered on May 12, 2022

**On brief:** *Garson Johnson LLC, James A. DeRoche*, and *Jeffrey D. Johnson*; *Weisman, Kennedy & Berris Co., L.P.A., R. Eric Kennedy,* and *Daniel P. Goetz*; *Ciano Goldwasser, LLP*, and *Andrew S. Goldwasser*, for appellant. **Argued:** *James A. DeRoche.*

**On brief:** *Brennan, Manna & Diamond, LLC, Robert A. Hager, Justin M. Alaburda,* and *Daniel J. Rudary*; *Dave Yost*, Attorney General, *and Timothy M. Miller*, for appellee. **Argued:** *Daniel J. Rudary.*

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Lamar Thomas, appeals the June 28, 2021 decision and judgment entry of the Court of Claims of Ohio finding defendant-appellee, Ohio Bureau of Workers' Compensation ("BWC"), was entitled to judgment as a matter of law and granting BWC's motion for judgment on the pleadings. For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2}    On March 4, 2021, appellant filed a complaint in the Court of Claims asserting claims for equitable restitution and unjust enrichment in addition to seeking declaratory and injunctive relief.  In his complaint, appellant alleged that on September 5, 2013, he was injured in the course and scope of his employment in an automobile accident.  Appellant filed a claim for workers' compensation benefits, and such claim was allowed by BWC for cervical and lumbar sprain.  According to appellant, his injury was caused by the negligence of a third party, and appellant pursued a separate claim against such party.

{¶ 3}    As a result of his injury, appellant sought medical treatment from a physician and received physical therapy.  Appellant's physician, Dr. Adam Friedman, authored a report opining that, as a result of the accident, appellant sustained a lumbar sprain and substantially aggravated pre-existing degenerative disc disease as well as pre-existing spondylothesis.  On June 14, 2014, appellant filed a request with BWC for an additional allowance for the conditions in Dr. Friedman's report.

{¶ 4}    In response to appellant's request for additional allowances, BWC referred the claim to an independent medical examiner, Dr. Gerald Yosowitz, who reviewed appellant's medical records and opined that the additional conditions identified by Dr. Friedman were degenerative and unrelated to the injury sustained by appellant in the automobile accident.  Based on Dr. Yosowitz's review, BWC referred appellant's claim to the Industrial Commission of Ohio ("commission").[1]  In front of the commission, BWC argued the commission should deny appellant's request for additional allowances.[2]  On January 16, 2015, the commission hearing officer disallowed the claim for the requested additional conditions based on Dr. Yosowitz's report.  On February 26, 2015, a second commission hearing officer denied appellant's appeal of the January 16, 2015 commission decision.  On March 20, 2015, the commission refused appellant's appeal.  As a result,

---

[1] BWC, in its brief in the present matter, states that it denied appellant's request for additional allowances "[b]ased on Dr. Yosowitz's independent review" of appellant's medical records. (BWC's Brief at 23.)

[2] The  decisions of the commission do not appear in the record before us. The facts summarized here are based on those allegations contained in appellant's complaint. See below ¶ 9 (discussing standard for judgment on the pleadings under Civ.R. 12(C)).

appellant was not able to participate in the workers' compensation fund for the additional conditions.

{¶ 5} Appellant further alleged that following the settlement of his third-party claim, BWC asserted a right of subrogation in the amount of $6,044.36 from appellant's settlement pursuant to R.C. 4123.93 and 4123.931. BWC's asserted subrogation interest was based in part on a list of medical bills in the amount of $5,544.01. Among the charges listed by BWC for appellant's medical bills was the cost of the record review and report performed by Dr. Yosowitz. Appellant paid BWC $6,044.36 from his third-party settlement to satisfy BWC's asserted subrogation interest. In his complaint, appellant alleged BWC had no legal right to recover the cost of Dr. Yosowitz's services as part of its subrogation interest on the proceeds of appellant's third-party claim and, therefore, BWC was unjustly enriched.

{¶ 6} On April 30, 2021, BWC filed an answer. On May 3, 2021, BWC filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). On May 14, 2021, appellant filed a memorandum contra BWC's May 3, 2021 motion. On June 28, 2021, the Court of Claims filed a decision holding that BWC's motion for judgment on the pleadings should be granted because appellant could prove no set of facts in support of his claims that would entitle him to relief and BWC was entitled to judgment as a matter of law. On the same date, the Court of Claims filed a judgment entry granting BWC's motion for judgment on the pleadings.

## II. Assignment of Error

{¶ 7} Appellant appeals and presents the following sole assignment of error for our review:

> The trial court erroneously interpreted "subrogation interest"
> [R.C. 4123.93(D)] to include administrative costs that neither
> the injured worker nor the statutory subrogee could recover
> from a liable third party.

## III. Assignment of Error—Interpretation of R.C. 4123.93(D)

{¶ 8} In his assignment of error, appellant asserts the court erred by granting judgment on the pleadings in favor of BWC because it incorrectly interpreted the statutory definition of the term "subrogation interest" under R.C. 4123.93(D) to include

administrative costs paid by BWC unrelated to an injured worker's medical treatment or compensation.

## A. Motion for Judgment on the Pleadings Under Civ.R. 12(C)

{¶ 9}   Pursuant to Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  A court considering a motion under Civ.R. 12(C) must construe the material allegations in the complaint and all reasonable inferences to be drawn by the same in favor of the nonmoving party as true.  *Ohio Mfrs. Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10.  Viewing the allegations in such light, the court may only grant a motion under Civ.R. 12(C) where it finds no material factual issues exist and the movant is entitled to judgment as a matter of law.  *Hinkle v. L Brands, Inc. World Headquarters*, 10th Dist. No. 21AP-80, 2021-Ohio-4187, ¶ 9.  Thus, a motion under Civ.R. 12(C) " 'tests the allegations of the complaint and presents a question of law.' "  *Jackson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-621, 2020-Ohio-1518, ¶ 11, quoting *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 9.  *See Lytal v. Crawl for Cancer, Inc.*, 10th Dist. No. 17AP-771, 2018-Ohio-2017, ¶ 8, citing S*tate ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973) (stating that a court is permitted to consider both the complaint and answer in resolving the question of law presented by a Civ.R. 12(C) motion).

## B. Subrogation Under Ohio Workers' Compensation Law

{¶ 10} R.C. Chapter 4123 provides the statutory framework for Ohio's workers' compensation system.  *See Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, ¶ 10. Under this chapter, the entity responsible for paying workers' compensation benefits to an injured claimant has a right of reimbursement from any recovery obtained by the claimant from a third party responsible for the injury.  *Ohio Bur. of Workers' Comp. v. Miller*, 10th Dist. No. 12AP-753, 2013-Ohio-2072, ¶ 10, citing *Ohio*

*Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, ¶ 27.[3] This right of subrogation is codified in R.C. 4123.931(A), which provides that "[t]he payment of compensation or benefits [under workers' compensation statutes] creates a right of recovery in favor of a statutory subrogee against a third party, and the statutory subrogee is subrogated to the rights of a claimant against that third party. The net amount recovered is subject to a statutory subrogee's right of recovery." R.C. 4123.93 defines the terms used in the provisions of workers' compensation statutes related to subrogation:

> (A) "Claimant" means a person who is eligible to receive compensation, medical benefits, or death benefits under this chapter or Chapter 4121., 4127., or 4131. of the Revised Code.
>
> (B) "Statutory subrogee" means the administrator of workers' compensation, a self-insuring employer, or an employer that contracts for the direct payment of medical services pursuant to division (P) of section 4121.44 of the Revised Code.
>
> (C) "Third party" means an individual, private insurer, public or private entity, or public or private program that is or may be liable to make payments to a person without regard to any statutory duty contained in this chapter or Chapter 4121., 4127., or 4131. of the Revised Code.
>
> (D) "Subrogation interest" includes past, present, and estimated future payments of compensation, medical benefits, rehabilitation costs, or death benefits, and any other costs or expenses paid to or on behalf of the claimant by the statutory subrogee pursuant to this chapter or Chapter 4121., 4127., or 4131. of the Revised Code.

---

[3] Although it is not necessary to analyze the history of subrogation under workers' compensation law to dispose of the question presented in this case, we nevertheless note that the present statutory scheme was substantially amended in response to a decision of the Supreme Court of Ohio. In *Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115 (2001), the Supreme Court struck down a prior version of the workers' compensation subrogation law, finding that it "operates unconstitutionally * * * because it allows for reimbursement from proceeds that do not constitute a double recovery." *Holeton* at 126. Following *Holeton*, the General Assembly enacted 2002 Sub.S.B. No. 227 ("S.B. 227"), which amended subrogation provisions in R.C. 4123.93 and 4123.931. *See State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Ohio Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, ¶ 14. The Supreme Court noted that Sub.S.B. 227 repealed the provisions that had been found unconstitutional in *Holeton* and found that, in replacing those provisions, "the manifest objective of the General Assembly in enacting S.B. 227 was to comply with our holding in *Holeton*." *Id*. at ¶ 17.

## C. Interpretation of R.C. 4123.93(D)

{¶ 11} This case presents a question of statutory interpretation regarding the scope of the statutory subrogee's subrogation interest as that term is defined under R.C. 4123.93(D). When interpreting statutory provisions, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey, Aud.*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21, citing *State ex rel. United States Steel Corp. v. Zaleski*, 98 Ohio St.3d 395, 2003-Ohio-1630, ¶ 12. " 'If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.' " *State ex rel. Natl. Lime & Stone Co. v. Marion Cty. Bd. of Commrs.*, 152 Ohio St.3d 393, 2017-Ohio-8348, ¶ 14, quoting *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545 (1996). *See State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11 (stating that "[o]nly when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling"); *State v. J.L.S.*, 10th Dist. No. 18AP-125, 2019-Ohio-4173, ¶ 71.[4]

{¶ 12} Statutory interpretation presents a question of law subject to a de novo standard of review. *Natl. Lime & Stone* at ¶ 14, citing *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, ¶ 8; *State ex rel. Peregrine Health Servs. of Columbus, L.L.C. v. Sears, Dir., Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-16, 2020-Ohio-3426, ¶ 23. The Supreme Court of Ohio has held that courts " 'must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command.' " *Bernard v. Unemp. Comp. Rev. Comm.*, 136 Ohio St.3d 264, 2013-Ohio-3121, ¶ 12, quoting *Swallow v. Indus. Comm.*, 36 Ohio St.3d 55, 57 (1988). If the statute in question " 'is silent or ambiguous with respect to the specific issue, the question

---

[4] We note that R.C. 4123.95 provides: "Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees." *See State ex rel. McDonald v. Indus. Comm.*, 10th Dist. No. 20AP-386, 2021-Ohio-4494, ¶ 27; *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 10th Dist. No. 06AP-373, 2006-Ohio-6786, ¶ 20, fn. 7 (stating that R.C. 4123.95 requires liberal construction of a statute where "the statute is ambiguous and requires construction"). *See generally Daugherty v. Cent. Trust Co. of Northeastern Ohio, N.A.*, 28 Ohio St.3d 441, 447 (1986), quoting *Dennis v. Smith*, 125 Ohio St. 120, 124 (1932) (stating that " ' "liberal construction" is not meant that words and phrases shall be given an unnatural meaning, or that the meaning shall be * * * expanded to meet a particular state of facts' "). As we do not find the statutory provisions at issue in this matter to be ambiguous, we need not apply R.C. 4123.95.

for the court is whether the agency's answer is based on a permissible construction of the statute.' " *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 12, quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).[5] *See Collateral Mgt. L.L.C. v. Ohio Dept. of Commerce*, 10th Dist. No. 20AP-123, 2021-Ohio-1641, ¶ 24, citing *Clark v. State Teachers Retirement Sys.*, 10th Dist. No. 18AP-105, 2018-Ohio-4680, ¶ 38.   However, courts grant no deference to an administrative agency's interpretation of a statute when that interpretation conflicts with the express terms of an unambiguous statute.  *Employer's Choice Plus, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 18AP-297, 2019-Ohio-4994, ¶ 24, quoting *Lang* at ¶ 12.  *See Clark* at ¶ 38.

{¶ 13} Appellant contends BWC improperly included its administrative costs in calculating its subrogation interest.  Specifically, appellant argues that BWC improperly included the cost of Dr. Yosowitz's record review and report as part of the medical bills in its subrogation interest following the settlement of appellant's third-party claim.  BWC responds that Dr. Yosowitz's report should be included in its subrogation interest because it was a cost or expense paid "on behalf of" appellant as that term is used in R.C. 4123.93(D).

{¶ 14} The court, construing the meaning of "costs or expenses" and "on behalf of" under R.C. 4123.93(D) according to rules of grammar and common usage, found that such terms "pertain to an amount paid by BWC or expenditure paid by BWC in the name of, on the part of, or as the agent or representative of a claimant." (June 28, 2021 Decision at 8.) As a result, the court found that "the costs and expenses incurred by BWC in connection with an injured worker's medical review—in this case [appellant]—are included within the statutory definition of 'subrogation interest' under R.C. 4123.93(D) because it is an expenditure paid by BWC on the part of a claimant." (June 28, 2021 Decision at 8.)

---

[5] We note that *Chevron*, on which *Lang* relies for its interpretation of agency authority, was based on the policy formulation and rulemaking process employed by federal agencies. *See Chevron* at 843-44, quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974) (" 'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). *See also* R.C. 1.49(F) (providing that where "a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters * * * [t]he administrative construction of the statute").  The case before us does not involve policy formulation or rulemaking.

{¶ 15} Here, we find the express terms of the statute to be unambiguous, though in so finding, we reach a different conclusion from BWC and the Court of Claims. The phrase "on behalf of" is not defined by the statute. Where "a term is not defined in the statute, it should be accorded its plain and ordinary meaning." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, ¶ 17, citing *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70 (1988). In reviewing the statutory language, we must read words and phrases in context and construe them according to the rules of grammar and common usage. R.C. 1.42.[6] *See In re Acubens, L.L.C.*, 10th Dist. No. 17AP-870, 2018-Ohio-2607, ¶ 14, citing *Steele* at ¶ 21, citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 90 Ohio St.3d 229, 231 (2000); *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, ¶ 9, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012) (" 'The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' "). In giving words their common, everyday meaning, it is common for a court to rely on dictionary definitions. *See Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, ¶ 24; *DLZ Corp. v. Ohio Dept. of Adm. Servs.*, 102 Ohio App.3d 777, 780 (10th Dist.1995).

{¶ 16} Merriam-Webster's Collegiate Dictionary defines "on behalf of" both as "in the interest of" and "as a representative of." *Merriam-Webster's Collegiate Dictionary* 110 (11th Ed.2014).[7] Similarly, the New Oxford American Dictionary defines "on behalf of" to mean: (1) "in the interests of a person, group, or principle"; (2) "as a representative of"; and (3) "on the part of; done by." *New Oxford American Dictionary* 150 (3d Ed.2010). The American Heritage Dictionary of the English Language defines "on behalf of" both as "[f]or the benefit of; in the interest of," and "[a]s the agent of; on the part of." *The American Heritage Dictionary of the English Language* 162 (5th Ed.2018). Webster's Third New

---

[6] R.C. 1.42 requires that where "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise," they must be "construed accordingly." *See Youngstown Sheet & Tube Co. v. Lindley*, 56 Ohio St.2d 303, 309 (1978). Here, the parties have not submitted any authority to support a technical or particular meaning for the phrase "on behalf of" under R.C. 4123.93(D). As a result, we must proceed with the command of R.C. 1.42 to read and construe the statute in question "in context and * * * according to the rules of grammar and common usage." *Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App.3d 118, 2008-Ohio-4353, ¶ 12 (10th Dist.).

[7] *See* Merriam-Webster, *Behalf*, https://www.merriam-webster.com/dictionary/behalf (accessed May 12, 2022).

International Dictionary defines "on behalf of" as "in the interest of," "as the representative of," and "for the benefit of." *Webster's Third New International Dictionary* 198 (2002).[8] The Random House Dictionary of the English Language 188 (2d Ed.1987) defines "on behalf of" to mean "as a representative of or a proxy for"; it also defines "on (someone's) behalf" to mean "in the interest or aid of (someone)." Thus, under the common sense meaning of "on behalf of" as defined above, any costs or expenses that are paid either in the interest of or as a representative of the claimant are within the scope of the statutory subrogee's subrogation interest under R.C. 4123.93(D). We find this common sense meaning of "on behalf of" resolves the question before us when applied to the facts of this case. *See Madden v. Cowen & Co.*, 576 F.3d 957, 973 (9th Cir.2009) (finding the phrase "on behalf of" in a statutory provision had an "unambiguous, common sense meaning" that did not necessitate inquiring of other statutes); *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224-25 (11th Cir.2009) (considering the "ordinary meaning" of the phrase "on behalf of").

{¶ 17} BWC argues that its subrogation interest includes the payment to Dr. Yosowitz for his record review and report because such payment was made on behalf of appellant. BWC supports this by arguing that appellant voluntarily initiated the request for additional allowances and, therefore, BWC was acting "to determine the propriety of [appellant's] request" by ordering the record review and report. (BWC's Brief at 24.) As a result, BWC argues that the cost or expense of the medical record review and report was

---

[8] We note BWC's argument that there exists a distinction between the phrases "on behalf of" and "in behalf of." However, while this may have been true, modern sources acknowledge that such distinction is no longer observed, or observed only infrequently. *See Merriam-Webster* at 110 ("A body of opinion favors *in* with the 'interest, benefit' sense of *behalf* and *on* with the 'support, defense' sense. This distinction has been observed by some writers but overall has never had a sound basis in actual usage. In current British use, *on behalf* (*of*) has replaced *in behalf* (*of*); both are still used in American English, but the distinction is frequently not observed."); *American Heritage Dictionary* at 162 ("Statistically, *on behalf of* is used far more frequently than *in behalf of*, and in fact the Usage Panel prefers *on behalf of* for both meanings.") (Emphasis sic.); *Garner's Modern English Usage* 103 (4th Ed.2016) ("The phrases *in behalf of* and *on behalf of* have traditionally signified different things. *In behalf of* means 'in the interest or for the benefit of' * * * *on behalf of* means 'as the agent or representative of' * * *. In current usage, the distinction is seldom followed; *on behalf of* is much more common in both senses."); *United States v. Romero*, 293 F.3d 1120, 1126 (9th Cir.2002) (stating that "the plain meaning of 'on behalf of' is broader than 'to the benefit of,' as the term also encompasses acting in a *representative* capacity") (Emphasis sic.); *Colony Tire Corp. v. Fed. Ins. Co.*, 217 F. Supp.3d 860, 866 (E.D.N.C.2016); *Occidental Fire & Cas. Co. v. Soczynski*, D.Minn. No. 11-2412 (JRT/JSM), 2013 U.S. Dist. LEXIS 2687 (Jan. 8, 2013), fn. 15 (noting that "the strict distinction between 'on behalf of' and 'in behalf of' * * * has been largely abandoned in the English language"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 99 (N.D.Ill.2013). Regardless, any difference between these phrases is immaterial to our resolution of the question presented as the result is the same under either definition.

incurred in appellant's name and on his behalf. Despite this creative framing of the facts, BWC's argument belies its relationship with claimants, such as appellant, and contravenes the common sense meaning of the phrase "on behalf of" as it is used in R.C. 4123.93(D).

{¶ 18} Appellant alleged in his complaint that he filed his claim for additional allowances after consulting his doctor, undergoing an evaluation, and providing support for his claim in the form of his doctor's medical report. BWC's actions upon receiving the claim were in its ministerial capacity through its review and processing of the claim by authorizing Dr. Yosowitz's review of appellant's medical records. In making its argument, BWC correctly notes that the workers' compensation process is designed as a nonadversarial system. *See State ex rel. Ohio AFL-CIO v. Ohio Bur. of Workers' Comp.*, 97 Ohio St.3d 504, 2002-Ohio-6717, ¶ 49 (stating that the "workers' compensation system is designed to avoid the adversarial character of the civil justice system"). However, the nonadversarial nature of the claim review process does not mean that BWC's actions are undertaken as the representative of or for the benefit of the claimant. Rather, BWC's operations in reviewing claims, including, as here, requests for additional allowances, are in the nature of its ministerial or administrative function. This crucial distinction is supported by BWC's own statements.

{¶ 19} As previously noted, BWC states that in ordering Dr. Yosowitz's record review and report, it was acting "to *determine* the *propriety* of [appellant's] request." (Emphasis added.) (BWC's Brief at 24.) BWC states that Dr. Yosowitz's medical review "was necessary to *evaluate* whether [appellant] was entitled to participate in the workers' compensation fund for the additional allowances." (Emphasis added.) (BWC's Brief at 22.) In order "[t]o assist in this *determination*," BWC relied on its authority under Ohio Adm.Code 4123-3-09(C)(4) to " 'at any point in the *processing* of an application for benefits, *require* the employee to submit to a physical examination or may refer a claim for investigation.' " (Emphasis added.) (BWC's Brief at 22, quoting Ohio Adm.Code 4123-3-09(C)(4).) *See* R.C. 4123.53(A) (providing that BWC "may require any employee claiming the right to receive compensation to submit to a medical examination"). By these statements, it is clear that BWC was not ordering the record review in the interest of or as the representative of appellant, but, rather, to fulfill its ministerial purpose of administering the workers'

compensation system. *See State ex rel. Crabtree v. Bur. of Workers' Comp.*, 71 Ohio St.3d 504, 507 (1994) (stating that the statutory framework of Ohio's workers' compensation system "consistently reflected" that the BWC's "role is ministerial"); *Greene v. Conrad*, 10th Dist. No. 96APE12-1780 (Aug. 21, 1997); *Broyles v. Conrad*, 2d Dist. No. 20670, 2005-Ohio-2233, ¶ 12. *See also Willitzer v. McCloud*, 6 Ohio St.3d 447, 449 (1983) (stating, under a prior version of workers' compensation scheme that an independent physician examining workers' compensation claimants, at the request of the commission for the purpose of reporting their medical conditions was performing an "investigative-medical fact-finding function").

{¶ 20} BWC states that its "mission" is "to ensure that a claimant is fully and fairly compensated to the extent he or she is entitled to be—*no more and no less*." (Emphasis sic.) (BWC's Brief at 27.)  Citing another provision of Ohio's workers' compensation statutes, BWC acknowledges that its "role" in this process is to serve "as steward and fiduciary of the State Insurance Fund."  (BWC's Brief at 25, citing R.C. 4123.32(B).) *See State ex rel. Daily Servs., L.L.C. v. Morrison*, 154 Ohio St.3d 498, 2018-Ohio-2151, ¶ 25 (stating that BWC "has a fiduciary responsibility to safeguard the Workers' Compensation Fund"); *State ex rel. Harry Wolsky Stair Builder, Inc. v. Indus. Comm.*, 58 Ohio St.3d 222, 224 (1991) (stating that BWC's "sole fiduciary responsibility is to the State Insurance Fund"). Contrary to BWC's contentions, these statements of its purpose do not demonstrate that BWC is acting as the representative of or in the interest of claimants.  Instead, they provide more support for BWC's ministerial role in fairly administering the claims presented to it by claimants.

{¶ 21} Next, BWC argues that "any" is a term that expands the scope of costs or expenses to include " 'all' costs or expenses of 'whatever kind' that were paid 'to or on behalf of' the claimant."  (BWC's Brief at 19.)  While it is true that the term "any" expansively qualifies the types of costs or expenses within the scope of subrogation interest under R.C. 4123.93(D), it is also true that "any" such costs or expenses must still be "paid to or on behalf of the claimant."  Thus, considering the word in context, as we are required to do by R.C. 1.42, our determination as to the plain language of the statute is unchanged.

{¶ 22} BWC cites *McManus v. Indus. Comm.*, 66 Ohio App. 14 (1st Dist.1940), for the proposition that it was acting as " ' "the representative, if not the champion, of the claimant, to the extent of seeing that exact justice is done him" ' " by ordering Dr. Yosowitz to complete a medical record review and report. *McManus* at 21, quoting *Miles v. Elec. Auto-Lite Co.*, 133 Ohio St. 613, 616 (1938), quoting *Roma v. Indus. Comm.*, 97 Ohio St. 247, 252 (1918). First, it is important to note that *McManus* and the cases quoted therein were decided prior to amendments to Ohio's workers' compensation statutes which substantially changed the framework under which BWC and the commission operate. *See State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 225, 226 (1994) (discussing 1993 Am.Sub.H.B. No. 107 which "abolished the five-member Industrial Commission of Ohio, created a new three-member Industrial Commission, substantially amended the workers' compensation law, and made appropriations for the Bureau of Workers' Compensation and the new commission"); *Druck v. Dynalectric Co. of Ohio*, 2d Dist. No. 19688, 2003-Ohio-3767, ¶ 14, fn. 2, citing *Greene*, *supra* (stating that "BWC claims examiners are charged with 'reviewing and processing' claims for benefits and 'investigating the facts,' but they no longer conduct adjudicative hearings").[9]

{¶ 23} Second, significant factual differences distinguish *Roma*, the case which originated the language in *McManus* cited by BWC, from the present matter. In *Roma*, the court considered the question of whether an appeal from an order of the commission to the Mahoning County Common Pleas Court was timely because the claimant did not receive actual notice of the commission's order denying compensation for the claimant's injury. Because the claimant's attorney withdrew from representation and the record reflected that the claimant did not have actual notice of the commission's denial, which was sent to the claimant's former attorney, the court found the claimant's appeal to the common pleas court was timely. In so finding, the court noted that "the principles and objects sought to be attained by the Workmen's Compensation Act" included "obviat[ing] the necessity of claimants dealing with the board through agents, representatives or attorneys." *Roma* at 252. The court found that by "voluntarily submit[ting] to the decision of the Board of

---

[9] We further note the provisions at issue here were enacted and amended subsequent to *McManus* and the decisions cited therein.

Awards," the claimant "denied to himself the right he may have had, if any, to prosecute his claim in the courts of the state." *Id.* In this context, the court found that "[t]he state of Ohio by the very terms of the law becomes in fact the representative, if not the champion, of the claimant, to the extent of seeing that exact justice is done him, and it is quite manifestly the intention of the law that the ordinary rules of procedure, although wise and fair in the abstract, must give way, if, in adhering to them, any conclusion even savoring of injustice would result." *Id.* at 252-53. Therefore, we find BWC's citation of *McManus* is not dispositive of the question before us in the present matter both due to the substantial developments in the law following the issuance of *Roma*, the decision on which the quoted portion of *McManus* relies, and factual distinctions separating that matter from the present.

{¶ 24} Thus, we cannot agree that including the cost of a record review and report performed by mandate of BWC in furtherance of BWC's administrative mission of discerning the merits of appellant's request for additional allowances comports with the common sense meaning of the phrase "on behalf of." Indeed, this interpretation strains the natural and most obvious reading of the statute's language. *See Stolz* at ¶ 9, citing *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 22 (stating in the context of applying an unambiguous statute that "a court must give effect to the natural and most obvious import of a statute's language, avoiding any subtle or forced constructions"). Appellant did not request or authorize the services of Dr. Yosowitz; nor was BWC acting as appellant's representative by requesting the record review to further its ministerial function. Applying the common meaning of the express terms of the statute to the undisputed facts of this case leads to a straightforward, unambiguous result—BWC's administrative costs are not encompassed by the definition of subrogation interest. As a result, the Court of Claims erred in finding Dr. Yosowitz's medical review and report was properly included in BWC's subrogation interest.

{¶ 25} We note appellant also argues that the court erred in failing to consider potential conflict between the parties' differing interpretations of the definition of subrogation interest and other provisions of workers' compensation law. Although analysis of other statutory code provisions is unnecessary given our resolution of the question under

the common, everyday meaning of the text at issue, and recognizing precedent of the Supreme Court applying the in pari materia rule of construction to ambiguous statutory language, we nevertheless find the context of the subrogation provision at issue within the broader scope of workers' compensation law to be of note. *See Ohio Neighborhood* at ¶ 34, citing *State v. Krutz*, 28 Ohio St.3d 36, 37-38 (1986) (citing *Krutz* for the proposition that "in pari materia rule applies only when a statute is ambiguous or the significance of its terms is doubtful"); *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585 (1995). *See also* R.C. 1.42; *Great Lakes Bar Control* at ¶ 9.

{¶ 26} The Supreme Court has stated the following with regard to potentially conflicting statutory provisions:

> First, all statutes which relate to the same general subject matter must be read in pari materia. And, in reading such statutes in pari materia, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict.

(Internal citations omitted.) *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35 (1991). Thus, "[t]he statutory-construction canon of in pari materia instructs that statutes relating to the same subject 'be construed together, so that inconsistencies in one statute may be resolved by looking at [the] other statute on the same subject.' " *State v. Smith*, ___Ohio St.3d ___, 2022-Ohio-274, ¶ 30, quoting *Black's Law Dictionary* 911 (10th Ed.2014). *See Thomas v. Freeman*, 79 Ohio St.3d 221, 225 (1997) (stating that the "maxim of in pari materia indicates that acts will be given full meaning and effect if they can be reconciled"); *State v. Pribble*, 158 Ohio St.3d 490, 2019-Ohio-4808, ¶ 12, quoting *State v. Moaning*, 76 Ohio St.3d 126, 128 (1996) (" 'It is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law.' "); *Meyers v. Hadsell Chem. Processing, L.L.C.*, 10th Dist. No. 18AP-387, 2019-Ohio-2982, ¶ 34.

{¶ 27} R.C. 4123.53(A) provides in pertinent part as follows:

The administrator of workers' compensation or the industrial commission may require any employee claiming the right to receive compensation to submit to a medical examination, vocational evaluation, or vocational questionnaire at any time, and from time to time, at a place reasonably convenient for the employee, and as provided by the rules of the commission or the administrator of workers' compensation. A claimant required by the commission or administrator to submit to a medical examination or vocational evaluation, at a point outside of the place of permanent or temporary residence of the claimant, as provided in this section, is entitled to have paid to the claimant by the bureau of workers' compensation the necessary and actual expenses on account of the attendance for the medical examination or vocational evaluation after approval of the expense statement by the bureau.

Thus, in the process of reviewing a claimant's claim, BWC may require the claimant to submit to a medical examination pursuant to R.C. 4123.53(A). It is further noteworthy that, in the event a claimant is required to submit to an examination outside the claimant's place of residence, the claimant is entitled to be paid for the expense of attending the examination. Similarly, Ohio Adm.Code 4123-3-09(C)(4) provides that "[t]he bureau or commission may, at any point in the processing of an application for benefits, require the employee to submit to a physical examination or may refer a claim for investigation."

{¶ 28} R.C. 4123.341 provides in pertinent part:

The administrative costs of the industrial commission, the bureau of workers' compensation board of directors, and the bureau of workers' compensation shall be those costs and expenses that are incident to the discharge of the duties and performance of the activities of the industrial commission, the board, and the bureau under this chapter and [other listed workers' compensation statutes], and all such costs shall be borne by the state and by other employers amenable to this chapter * * *.

Thus, under R.C. 4123.341, BWC's administrative costs include those costs and expenses that are incident to the discharge of its duties and performances of its activities. BWC, along with subject employers, is required to bear the burden of paying for such administrative costs, and is prohibited from passing such costs on to claimants. *See Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, ¶ 4, quoting R.C. 4123.341 (stating

that "the bureau * * * is required to ensure that all 'administrative costs'—that is, all costs that are 'incident to the discharge of the duties and performance of the activities of the * * * bureau'—are borne by the state and employers").

{¶ 29} From the foregoing, it is clear that, in the processing of a claim for benefits, BWC has the authority to refer such claim for investigation, as was done in this case when BWC sought Dr. Yosowitz's opinion of appellant's medical records. The fact that this procedure occurs in the processing of an application for benefits, renders this procedure "incident to the discharge of the duties and performance of the activities" of the BWC. R.C. 4123.341. As a result, BWC, not the claimant, is required to bear the expense of such administrative cost. Considering R.C. 4123.53(A), Ohio Adm.Code 4123-3-09(C)(4), and R.C. 4123.341 in pari materia with R.C. 4123.93, it is apparent that the cost or expense of the medical record review and report prepared by Dr. Yosowitz at the direction of BWC was an administrative cost, and, as such, was required to be borne by BWC, not charged to appellant as part of BWC's subrogation interest. Therefore, having found under the common, everyday meaning of the plain language of R.C. 4123.93(D) that the cost or expense paid by BWC for Dr. Yosowitz's record review and report cannot be considered to be encompassed under the statutory definition of subrogation interest, we must sustain appellant's assignment of error and remand this matter for further proceedings.

{¶ 30} Accordingly, we sustain appellant's sole assignment of error.

**IV. Conclusion**

{¶ 31} Having sustained appellant's sole assignment of error, we reverse the June 28, 2021 decision and judgment entry of the Court of Claims of Ohio and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

KLATT and MENTEL, JJ., concur.

————————————